Craig Cherney, Esq.
**EDWARDS & CHERNEY, LLP**
14300 N. Northsight Boulevard, Suite 129
Scottsdale, Arizona 85260
Office: (480) 240-0040
Fax: (480) 656-5966

Attorney for **Plaintiff**
Arizona State Bar Number 027485
E-mail: ccherney@edwardsandcherney.com

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **KELLY NELSON,**<br><br>             Plaintiff,<br><br>v.<br><br>**MILLENNIUM LABORATORIES, INC.,** a California corporation; **JASON BRISTOL**, an individual; and Does 1-10, inclusive,<br><br>             Defendants. | Case No. 2:12-cv-01301-SLG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RULE 16(B) MOTION TO MODIFY PRETRIAL SCHEDULING ORDER** |

## MEMORANDUM OF POINTS AND AUTHORITIES

Relying on Rule 16(b) of the Federal Rules of Civil Procedure, Plaintiff Kelly Nelson ("Nelson") moves this Court to modify the Pretrial Scheduling Order to continue expert witness cutoff dates in this action for 90 days and to continue all other associated deadlines in this matter as the Court deems warranted.

**I.      BACKGROUND TO THIS ACTION**

This case involves a host of unlawful discrimination and federal false claims retaliatory discharge claims arising out of Plaintiff's prior employment at Defendant Millennium Laboratories, Inc. ("ML") where she was employed from June 15, 2009 through December 9, 2011.

1

ML is in the business of providing urine drug test screening services to health care providers seeking to monitor their patients' ingestion of pain medications and other prescriptions. While employed at ML, Plaintiff successfully led ML's southwest regional sales team growing her region's urine drug testing sample sales from less than 500 samples per month to almost 9,000 urine samples per month.

Despite Plaintiff's well-documented and hugely successful sales career while employed with Defendant ML, in November 2011 things changed rapidly in her southwest region when ML Regional Vice President Jason Bristol ("Bristol") arrived to take over oversight of her sales territory.

Bristol brought with him a host of illegal sales practices and a "my way or the highway" dictator management style which, after locking Plaintiff in his hotel room for several hours, and later demanding Plaintiff and her team violate federal Stark laws and anti-kickback statutes – requests which Plaintiff refused – Bristol caused Plaintiff's swift and unlawful termination just *three days* after her blowing the whistle on Defendants' illegal practices and Bristol's unlawful management approach.

The allegations in this case are grave and shall be substantiated before a jury. Several issues will require the assistance of capable expert witnesses who will opine on the Stark and anti-kickback statutes and how they relate to Defendants' alleged misconduct. With fact discovery still not completed, and four ML executive vice presidents still scheduled for live deposition in May 2013, the factual record of this case is not yet ripe for adequate expert witness review and opinion such that a short extension of the expert witness cutoff dates is warranted.

Plaintiff's allegations in this case have caught the attention of the federal government's Department of Justice, which is currently advancing a federal criminal grand jury investigation in Boston, Massachusetts against Defendant ML for many of the same facts alleged in this case. In October 2012, Plaintiff in this case personally appeared before the federal Boston Grand Jury. The pending criminal investigation against ML is led by Assistant U.S. Attorney Susan Winkler who has successfully prosecuted billion dollar cases

against this country's largest health care firms.  In fiscal year 2011 alone, Ms. Winkler's office is credited with seizing $1.67 billion in civil and criminal penalties from the health care industry.  See http://www.bloomberg.com/news/2012-03-14/health-care-prosecution-losses-mar-u-s-marketing-probe.html .

A national *Reuter's* news article detailing the breadth and scope of Defendants' alleged misconduct relating to its unlawful urine drug testing sales practices was recently published on November 16, 2011.  See *Affidavit of Plaintiff's Counsel,* paragraph 3 and Ex. B. ("The company not only is under investigation by the Justice Department for allegations of health care fraud but also for intimidating former employees, one who was portrayed in a slideshow at a company meeting as a corpse in a body bag.  Two of the ex-employees, who had raised concerns about Millennium's sales practices, also say they were followed for weeks by private investigators they believe were hired by the company.")

Plaintiff is a forty-one year old single female and former employee who suffered an extreme and retaliatory discharge for telling the truth about Defendant Vice President Bristol and the Defendant Company's unlawful sales practices and tactics.  Standing up for the truth immediately cost Plaintiff her job.  In advancing her case, Plaintiff seeks to extend the pretrial scheduling dates so that expert witnesses, when called upon to advance their opinions of the case, have a complete factual record upon which to opine.  In seeking a short 90 day extension of the expert witness deadlines in this case, Plaintiff relies on Rule 16(b) of the Federal Rules of Civil Procedure.

**II. Legal Standard**

"Federal Rule of Civil Procedure 16(b) gives district courts wide latitude in entering scheduling orders." Johnson v. Mammoth Recreations, Inc., 975 F. 2d 604, 607-08 (9th Cir. 1992); Eckert Cold Storage, Inc. v. Behl, 943 F. Supp. 1230, 1232-1233 (E.D. Cal.1996). Once entered, district courts may modify scheduling orders upon a showing of "good cause," Fed. R. Civ. Proc., Rule 16(b), and their decisions are reviewed only for abuse of discretion. Id.  Good cause is shown when the schedule cannot reasonably be met despite the

diligence of the party seeking the extension. Hussain v. Nicholson, 435 F. 3d 359,367 (D.C. Cir. 2006); Leary v. Daescher, 435 F. 3d 888, 906 (6th Cir. 2006).

As one court notes, the moving party's diligence is the primary focus, while prejudice to the opposing party is another relevant consideration: "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir.2001) (citing Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)); see also Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir.2000) (joining Eighth, Ninth, and Eleventh Circuits in construing "good cause" as depending on the movant's diligence). Another relevant consideration is possible prejudice to the party opposing the modification. See Bradford, 249 F.3d at 809 (citing Johnson, 975 F.2d at 609); Inge v. Rock Financial Corp., 281 F. 3d 613, 625 (6th Cir. 2002) (Court abused its discretion in failing to grant Rule 16(b) motion to amend scheduling order where good cause was present on the record).

### III. Discussion

A. <u>Plaintiff has diligently attempted to prosecute discovery in this action despite Defendants' ongoing "stonewall" approach to not provide Plaintiff any relevant evidence that she has sought directly from Defendants.</u>

Plaintiff is unable, despite due diligence, to complete initial expert report disclosures by April 30, 2013.[1] Part of the reason is Defendants' ongoing refusals to respond to discovery, and part is the nature of additional proof that must be gathered in May 2013 for presentation at trial.

By order dated September 25, 2012 this Court issued its original and currently operative Scheduling and Planning Conference Report in this case. (Docket No. 26). After personally appearing before the federal criminal grand jury in Boston, Plaintiff promptly

---

[1] As a preliminary matter, Plaintiff's counsel certifies to the Court under Civil Local Rule 7.2(j) that Plaintiff's counsel met and conferred with opposing counsel on whether a stipulation to extend the expert witness cut-off dates was feasible by stipulation. On April 15, 2013 Defendants' counsel verbally informed Plaintiff's counsel of Defendants' refusal to stipulate to the Rule 16(b) relief requested herein. See *Affidavit of Plaintiff's Counsel,* paragraph 2 and Ex. A.

EDWARDS & CHERNEY, LLP
14300 N. Northsight Boulevard, Suite 129
Scottsdale, Arizona 85260

commenced discovery after both Defendants elected to answer the Complaint and not file a single motion to dismiss against any of Plaintiff's claims for relief.

On December 21, 2012 Plaintiff served her initial discovery responses upon Defendant ML. Plaintiff's December 21, 2012 request for production of documents and things set one was not answered by Defendants until February 13, 2013. However, many of Defendants' February 13, 2013 discovery responses provided to Plaintiff were: (a) incomplete; (b) blanket refusals to answer the requests; (c) invoked unspecified claims of privilege; or (d) otherwise sought to place the production burden back onto Plaintiff to come "meet and confer" with Defendants on the proper scope of the December 21, 2012 requests for production.

Anticipating Defendants' full compliance with the Federal Rules of Civil Procedure, Plaintiff diligently sought to comply with Defendants' requests to narrow her original discovery requests in both scope and timing. By letter dated March 12, 2013 Plaintiff in good faith reduced the date/time periods and scope of many of her December 21, 2012 document requests and further asked Defendants to generate a privilege log to the extent Defendants intended to continue to invoke claims of privilege or attorney work product protection as a basis to not respond to Plaintiff's discovery. See *Affidavit of Plaintiff's Counsel*, paragraph 4 and Ex. C. It should also be noted that Plaintiff produced her own privilege log to Defendants in January 2013 and amended the log upon Defendants' subsequent request on March 12, 2103.

With still no document production forthcoming from Defendants, on April 4, 2012 Plaintiff again requested Defendants to meet and confer on their continuing refusal to fully respond to Plaintiff's December 21, 2012 discovery requests. On April 12, 2012 Plaintiff again tendered her request that Defendants respond to Plaintiff's outstanding December 21, 2012 request for production. Plaintiff further requested that Defendants consider a mutual stipulation to extend the expert witness cut-off dates insofar as the parties are nowhere near having a sufficiently developed factual record for an expert witness to evaluate and opine in this case, let alone for Plaintiff to have expert reports written and disclosed by April 30,

2012.

As has become their routine practice, Defendants refused to produce documents, a privilege log or accommodate Plaintiff's request to extend the expert witness cutoff dates. On April 15, 2013 Defendants' counsel telephonically informed Plaintiff's counsel that they refused to stipulate to any Rule 16(b) extensions of the pretrial cut-off dates.

B. <u>When not dealing directly with Defendants, Plaintiff has diligently and successfully prosecuted discovery in this case.</u>

Plaintiff has diligently advanced her case, and completed multiple depositions of third party fact witnesses despite Defendants' failure to timely comply with discovery protocol. Plaintiff has done everything in her power to advance her claims during pretrial discovery and does not come to this Court seeking Rule 16(b) relief without having made every effort to advance her case within the currently imposed court deadlines. <u>See</u> <u>Johnson</u> 975 F.2d at 609.

For example, when *not dealing directly* with Defendants during fact discovery, Plaintiff has timely and effectively gathered evidence from third party fact witnesses which has revealed significant and material facts in support of her claims. The following chart reveals Plaintiff's diligent and continuing efforts to reveal the truth in this case through the personal knowledge of third party fact witnesses:

| <u>Plaintiff's Third Party Witness Deposition</u> | <u>Date Completed</u> |
|---|---|
| Diane Pajack Smith | February 7, 2013 |
| Gilbert Lopez | February 15, 2013 |
| Elizabeth Renee Field | February 18, 2013 |
| Jodie Strain | February 28, 2013 |
| Ryan Uehling | April 2-3, 2013 |

As further evidence of Plaintiff's good faith efforts to comply with all court deadlines, Plaintiff has noticed and additionally scheduled the depositions of four additional Defendant ML executives and another third party fact witness which are currently noticed to occur as follows:

| | |
|---|---|
| ML VP Jason Bristol | May 1, 2013 |
| ML VP Elizabeth Peacock | May 2, 2013 |
| ML VP Nicole Moberg | May 3, 2013 |
| ML President Howard Appel | May 6, 2013 |
| Third party fact witness Sara Roodbari | May 14, 2013 |

In stark contrast to Plaintiff's diligence to advance development of the factual record, to date Defendants have taken only *one deposition* which spanned less than two hours and involved Plaintiff's hormone replacement medical doctor. (Defendant's deposition of Dr. Angela DeRosa conducted April 12, 2013).

Under the Court's current expert witness disclosure deadline of April 30, 2013, Plaintiff's experts will be prevented from analyzing the critical deposition testimony of the four ML executives and third party fact witness Roodbari which Plaintiff contends are at the center of her unlawful termination, false claims act retaliation and slander claims. Further, Plaintiff's expert witnesses will need to examine the additional discovery which Plaintiff intends to compel production of relating to her December 21, 2012 request for production. To that end, Plaintiff will soon be filing a motion to compel asking for court ordered production of those same documents. Indeed, these documents are critical to plaintiff's ability to complete depositions of defendant's personnel, including named defendant Jason Bristol and other members of defendant's upper management team.

B. <u>Plaintiff has produced over three times the documentary discovery in this case compared to Defendants' continuing tactics to delay and hide the truth and refuse to comply with the Federal Rules of Civil Procedure.</u>

Since discovery began, Plaintiff has been attempting to prove up her case in the following areas: unlawful sexual and age discrimination, retaliatory discharge, false claims act retaliation, slander and other related state law claims.

As of the date of this Rule 16(b) motion to extend time, Plaintiff has produced over 1,292 discovery documents in this case under her custody and control whereas Defendants

7

appear to have only produced 424 documents under their direct custody and control. *Affidavit of Plaintiff's Counsel*, Paragraph 5.  When comparing one single person (Plaintiff) with the enormous corporate Defendant ML here (a multimillion dollar company with 200+ employees, several in-house legal counsel and multiple law firms defending ML in this case), common sense dictates that ML's discovery has been methodically and purposely withheld and delayed from production to shroud the truth from emerging in this case.

It is equally important that this Court understand that Plaintiff has been served with and remains subject to a federal grand jury subpoena for all documents and things in her custody and control which relates to ML. *Affidavit of Plaintiff's Counsel*, paragraph 6 and Ex. D.  By the Court extending the expert witness deadlines in this case, Plaintiff will be allowed sufficient time to demonstrate and prove her allegations which are substantially similar to the government's ongoing criminal inquiry into ML's unlawful business practices.

To a significant extent, Defendants have brought the need to continue the pretrial dates on themselves.  To date, Defendants have refused to provide Plaintiff a *single* personnel file relating to any other ML employee—files critical for Plaintiff to evaluate the validity of her Title VII disparate treatment claims.  Defendants have also refused to provide Plaintiff a single file demonstrating the sales volumes of other ML personnel performing Plaintiff's prior job description (regional sales manager)—so that Plaintiff and her experts may properly evaluate the validity of her Title VII and state law claims that her sales rates and volumes were treated disparately based on Plaintiff's age, sex and her election to blow the whistle on certain Defendants' business practices.  As noted above, Plaintiff's motion(s) to compel are being prepared and shall be brought against Defendants in a short period of time.  Assuming the motions to compel are heard by this Court within 30 or 60 days, the April 30, 2012 expert witness disclosure cut-off date will have long since expired.

The evidentiary record, in its current condition, is not adequately developed to allow the parties' expert witnesses to render full expert opinions.  Even if expert reports were in fact exchanged under the present pretrial scheduling order, such reports would all have to be supplemented later as the factual record continues to develop through ongoing discovery

throughout May 2013. This wastes the precious and limited resources of both parties, particularly here where the resources of the two sides are so diametrically opposed.

In sum, defendants have diligently attempted to obtain discovery from Plaintiffs but have thus far been unsuccessful. While denial of the requested continuance would deeply prejudice Plaintiff, granting the requested continuance of the expert witness cutoff does not prejudice Defendants. In granting the requested relief herein, both parties' experts will have the benefit of all relevant facts and avoid supplemental disclosures based on new facts presently being obtained in discovery.

## IV. CONCLUSION

The reasons for Plaintiff seeking extension of the expert witness cut-off dates arises out of: (a) an ongoing dispute with Defendants regarding the disclosure of documents in their custody and control; (b) Defendants' refusal to timely generate a privilege log allowing Plaintiff to evaluate Defendant's privilege assertions; and (c) Plaintiff's need to conduct at least five more depositions scheduled in May 2013 which includes Defendant ML executives Howard Appel, Elizabeth Peacock, Jason Bristol and Nicole Moberg and third party fact witness Sara Roodbari. None of these issues were foreseeable when discovery began, and now that Plaintiff recognizes the gravity and timing implicated by the facts above, Plaintiff has appeared before this Court in good faith seeking a Rule 16(b) extension of the expert witness cutoff dates. Plaintiff has met her burden of showing good faith diligence to comply with the Court's existing order, justifying a short extension of same.

//

//

9

For the foregoing reasons, Plaintiff respectfully requests the Court grant a 90 day extension of the expert witness cut off dates and any other associated dates the Court deems warranted for a period of time not less than the continuance granted herein.

**RESPECTFULLY SUBMITTED** this 16th day of April, 2013.

**EDWARDS & CHERNEY, LLP**


By:__/s/ Craig Cherney_____
    Craig Cherney, Esq.
    Attorney for **Plaintiff**

ORIGINAL mailed this April 16, 2013:

Mark Ogden, Esq.
Christie L. Kriegsfeld, Esq.
J. Greg Coulter, Esq.
LITTLER MENDELSON, P.C.
2425 East Camelback Road, Suite 900
Phoenix, AZ 85016
*Attorneys for Defendants*

And a copy mailed to:
Michael K. Loucks
Skadden, Arps, et al.
One Beacon Street, Boston, MA 02108
*Attorneys for Defendants*

Barry M. Walker, WALKER TRIAL LAWYERS, LLP
31618 Railroad Canyon Road, Suite 1
Canyon Lake, CA 92587
*Attorney for Plaintiff*


By:____/s/ Leslie Menegay_____

**EDWARDS & CHERNEY, LLP**
14300 N. Northsight Boulevard, Suite 129
Scottsdale, Arizona 85260