**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

KELLY NELSON,

                    Plaintiff,

      v.

MILLENNIUM  LABORATORIES,  INC.,  a
California corporation; JASON BRISTOL,
an individual; and DOES 1-10, inclusive,

                  Defendants.        Case No. 2:12-cv-01301-SLG

<u>**ORDER RE MOTION TO COMPEL**</u>

      Defendant  Millennium  Laboratories,  Inc.  filed  an  Expedited  Motion  to  Compel

Discovery  Responses  on  May  7,  2013  at  Docket  103.    This  Court  granted  expedited

consideration on May 9, 2013 at Docket 106.  Plaintiff Kelly Nelson opposed the motion

on May 13, 2013 at Docket 116.  Millenium replied on May 15, 2013 at Docket 119.

      In this motion, Millennium seeks an order from the Court compelling Ms. Nelson

to  provide  certain  materials  that  Millennium  asserts  are  discoverable.[1]    Millennium

---

[1] Millennium has certified its efforts to resolve this dispute with Ms. Nelson, in accordance with
Federal Rule of Civil Procedure 37(a)(1) and Local Civil Rule 7.2(j).  Docket 103 at 1-2.

requested expedited consideration because Ms. Nelson's deposition is scheduled for May 21, 2013.[2]  For the reasons explained below, Millennium's motion is GRANTED in part, DENIED in part, and DEFERRED in part.

## I.    Legal Standard.

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Rule 26 also provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  Rule 37 addresses a party's ability to file a motion to compel discovery and provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection."

## II.    Discussion.

Ms. Nelson is a former employee of Millennium who was terminated on December 9, 2011.  The Complaint in this action asserts twenty claims for relief arising from her termination and associated events.

Numerous discovery motions have been filed in this case.  In the present motion, Millennium asserts that Ms. Nelson has withheld three types of documents in the course of discovery: (1) "critically important cellular telephone records," (2) documents Ms. Nelson has improperly designated as privileged under the common interest doctrine, and (3) fee agreements and other documents relating to attorney's fees and costs.

---

[2] Docket 103 at 2.

### A. *Cellphone Records.*

Millennium seeks production of Ms. Nelson's cellphone records from June 1, 2011 to March 31, 2012, and asserts that the "records are necessary for Defendants to prepare for her deposition[.]"[3]  Ms. Nelson indicates in her Opposition that she will produce the cellphone records in question.[4] Accordingly, Ms. Nelson shall produce her unredacted cellphone records for the period June 1, 2011 through March 31, 2012 and deliver them to Millennium by 12:00 p.m. on May 20, 2013.

### B. *Privileged Documents.*

Millennium seeks disclosure of certain items that appeared in Ms. Nelson's revised privilege log of March 12, 2013.[5]  The following documents identified in the log are at issue:[6]

- Items 12-17, 19-22: communications between counsel for Ms. Nelson and The Ward Law Firm.[7]
- Items 35-36: communications between counsel for Ms. Nelson and Jodie Strain.

---

[3] Docket 103 at 5.

[4] Docket 116 at 17 ("Nelson hereby agrees to produce these materials.")

[5] Docket 103 at 11.  Millennium states that Ms. Nelson's original privilege log, submitted on January 25, 2013, failed to comply with Rule 26 and that Ms. Nelson subsequently produced some communications that she had designated as privileged.  *Id.*

[6] Docket 119 at 10; Docket 103-9 (privilege log).  Millennium originally sought production of item 18 as well, but it appears that Ms. Nelson has produced that document.  *See* Docket 116 at 14 (stating item 18 had been produced); Docket 119 at 10 (list of requested items does not include item 18).

[7] The privilege log contains two entries for item 22.  The other is described as a "Notes re: Former Attorney" regarding Sara Roodbari.  Docket 103-9 at 5.  As the parties' briefing does not mention any individual by that name, the Court has assumed that the entry for item 22 involving The Ward Law Firm is the one at issue.

- Items 39-40: communications between counsel for Ms. Nelson and Gilbert Lopez.

Ms. Nelson maintains that most of the documents requested are protected by the common interest doctrine,[8] but makes an exception for items 39-40, conceding that she and Mr. Lopez do not share a common interest but that the documents are protected by the work product privilege.[9]

Ms. Nelson cites to Arizona privilege law, while Millennium cites to federal law.[10] Federal Rule of Evidence 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  But the Ninth Circuit has held that "[w]here there are federal question claims and pendent state law claims present, the federal law of privilege applies."[11] Here, the Complaint asserts claims under both federal and state law; thus, the Court will apply federal privilege law.

*i.*    *Items 39-40.*

Ms. Nelson asserts that items 39-40 "reflect a draft email and declaration from Nelson's attorneys to a former Millennium employee, Gilbert Lopez," and that they are protected by the work product privilege because the documents were never sent to Mr. Lopez.[12]  Millennium argues that Ms. Nelson's privilege log does not reflect this, as it does not indicate that the items are drafts that were not sent; and moreover that "it is

---

[8] Docket 116 at 5-14.

[9] Docket 116 at 15.

[10] Docket 116 at 6 and n.3.

[11] *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005).

[12] Docket 116 at 15.

difficult to ascertain how a draft declaration that was prepared for a third party to execute for subsequent disclosure in this litigation would constitute attorney work product."[13]

The Ninth Circuit has held that "[t]he work-product doctrine protects 'from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation.'"[14]  To fall under the privilege's protection, a document must be '(1) be "prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'"[15]  Items 39-40 appear to fit within this definition, as they were prepared for this litigation by Ms. Nelson's attorney. Millennium has provided no reason to doubt counsel for Ms. Nelson's statement to this Court that the documents were never sent; therefore, the privilege has not been waived. Accordingly, Millennium's motion is denied with regard to items 39-40.

ii.   *Items 12-17, 19-21, 35-36.*

Ms. Nelson maintains that the remaining items are covered as work product under the common interest doctrine, which extends attorney-client privilege to communications with third parties under certain circumstances.  Ms. Nelson states that Jodie Strain is a former employee of Millennium who is engaged in a separate lawsuit against Millennium.[16]  Ms. Nelson asserts that log items 12-17 and 19-22 "reflect work

---

[13] Docket 119 at 7-8.

[14] *U.S. v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (quoting A*dmiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)).

[15] *U.S. v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (quoting *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt.* (Torf), 357 F.3d 900, 907 (2004)).

[16] Docket 116 at 3.

product communications shared between counsel for Nelson and Strain that reflect factual investigations."[17]   She asserts that items 35-36 "reflect attorney-client communications and work product communications shared between Strain, her attorneys, and counsel for Nelson that further efforts toward preparing Nelson's federal suit here."[18]

In *In re P. Pictures Corp.*, the Ninth Circuit held that "[r]ather than a separate privilege, the 'common interest' or 'joint defense' rule is an exception to ordinary waiver rules designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other."[19]  In *U.S. v. Gonzalez*, the Ninth Circuit described the common interest doctrine's purpose as follows:

> Whether the jointly interested persons are defendants or plaintiffs, and whether the litigation or potential litigation is civil or criminal, the rationale for the joint defense rule remains unchanged: persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims.[20]

Before applying the common interest doctrine, a court must first find that a common interest agreement exists.  To do this, "no written agreement is required"; a common interest agreement "may be implied from conduct and situation, such as attorneys

---

[17] Docket 116 at 14.

[18] Docket 116 at 14-15.  Ms. Nelson makes some references to her counsel's communications with Ameritox,

[19] 679 F.3d 1121, 1129 (9th Cir. 2012) (citing *Hunydee v. United States*, 355 F.2d 183, 185 (9th Cir.1965); *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir.1990)).

[20] *U.S. v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012) (quoting *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990)).

exchanging confidential communications from clients who are or potentially may be codefendants or have common interests in litigation."[21]

Millennium asserts that, as a threshold matter, Ms. Nelson's argument fails because she has not identified a formal common interest agreement. *Gonzalez* involved a joint defense agreement between two defendants—Gonzalez and Paiz, husband and wife—in separate criminal cases arising from their involvement in the same alleged insurance scam. The Ninth Circuit held that the evidence contained sufficient evidence of a joint defense agreement between the two defendants. Counsel for Gonzalez had filed a declaration testifying that the protected "communication . . . was for the purpose of preparing a joint defense strategy and involved the sharing of confidential information" and that "[t]he clear understanding was that such communications were privileged."[22] Counsel for Paiz had provided similar testimony at her deposition and had further testified that "we certainly discussed, and repeatedly, I think, at various points, talked about the fact that it was a joint defense agreement, that there was a joint defense, that we share confidential information, which is the whole point of the joint defense."[23] Based on this evidence, the Ninth Circuit found that "[t]he timeline of events and the facts of this case could suggest that a JDA existed at the

---

[21] *U.S. v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012) (citing *Cont'l Oil Co. v. U.S.*, 330 F.2d 347, 350 (9th Cir. 1964)).

[22] *U.S. v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012)

[23] *U.S. v. Gonzalez*, 669 F.3d 974, 980 (9th Cir. 2012).

outset between the parties and their counsel," although it had subsequently ended when the parties' interests diverged.[24]

The Ninth Circuit held in *In re P. Pictures Corp.* that "a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception. . . Instead, the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten."[25]

Ms. Nelson repeatedly asserts that she and Ms. Strain share a common legal interest in their respective litigations against Millennium.[26]   Counsel for Ms. Nelson has provided a declaration under penalty of perjury addressing his communications with counsel for Ms. Strain, which includes the following statement:

> The purpose of these communications . . . all of which occurred after Edwards & Cherney was retained by Nelson, was to facilitate the rendition of professional legal services to my client in her lawsuit against Millennium.   These communications were developed in anticipation of, and during, litigation and constitute mental impressions, opinions, conclusions, and legal theories. These communications concern matters of common interest and reflect litigation strategies between the parties and/or their counsel.[27]

Ms. Nelson has attached an affidavit from counsel for Ms. Strain which appears to have been prepared for a suit in the Southern District of Texas, though no case number

---

[24] *U.S. v. Gonzalez*, 669 F.3d 974, 981 (9th Cir. 2012)

[25] *In re P. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012) (citing *Hunydee v. United States*, 355 F.2d 183, 185 (9th Cir.1965); *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir.1990); *Continental Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir. 1964)).

[26] *See, e.g.,* Docket 116 at 8, 9, 11, 14.

[27] Docket 116-8 at 3 (Ex. H).

appears on the document and Ms. Nelson has not explained the purpose for which it was prepared.[28]   That affidavit contains substantially similar statements to those provided by counsel for Ms. Nelson.

The Court is unable to discern without reviewing the documents at issue if a common interest agreement exists.  Accordingly, Ms. Nelson is ordered to submit items 12-17, 19-22, and 35-36 of Ms. Nelson's March 12, 2013 privilege log to the Court for in camera review by 12:00 p.m. on May 20, 2013.

### C. Fee Agreements.

Millennium seeks to have Ms. Nelson supplement her responses to the following requests for production, which it propounded on Ms. Nelson on March 4, 2013:

> 26.  All agreements, communications, and other documents referring or relating to payment of [Ms. Nelson's] attorneys' fees, costs, and/or disbursement in connection with this Action.
>
> [. . .]
>
> 28.  All agreements, communications, and other documents between [Ms. Nelson] and K&L Gates, LLP referring or relating to this Action, including, but not limited to, all correspondence, invoices, bills, receipts and records of payment for services from December 1, 2011, to the present.
>
> 29.  All agreements, communications, and other documents between [Ms. Nelson] and The Ward Law Firm referring or relating to this Action, including, but not limited to, all correspondence, invoices, bills, receipts and records of payment for services from December 1, 2011, to the present.[29]

Ms. Nelson made the following objections to each of the above requests:

---

[28] Docket 116-12 (Ex. L).

[29] Docket 103-5 at 7. Millennium's motion also contains Request for Production 27, but Millennium does not include that request in its proposed relief.  *See* Docket 103 at 15; Docket 103-11 at 1.  Accordingly, the Court has not included or addressed it here.

> Nelson objects to this request because it is overly broad, unduly burdensome, and seeks information that is neither relevant to the issues in the case nor reasonably calculated to lead to the discovery of admissible evidence in this case. Nelson also objects to this request because it seeks information protected by the attorney client privilege, work product privilege and common interest privilege.[30]

She additionally asserted that she "ha[d] no non-privileged documents in her possession."[31]

Millennium asserts in its motion that the requested information "is directly relevant to [Ms.] Nelson's damages as well as any potential bias."[32]   It appears that Millennium's bias argument is based on a suspicion that Ameritox, one of its market competitors, may be funding Ms. Nelson's litigation.[33]

In her opposition, Ms. Nelson continues to assert that the documents responsive to these requests are protected by the work product privilege and the common interest doctrine.[34]

Millennium asserts that the responsive documents are not privileged, as "fee arrangements do not constitute attorney-client communications and Millennium is not seeking any communications between Plaintiff and her retained counsel that were made for the purpose of facilitating the rendition of professional legal services."[35]

---

[30] Docket 103-5 at 11.

[31] Docket 103-5 at 11.

[32] Docket 103 at 8.

[33] Docket 119 at 8 ("Notably absent from the Opposition is any assertion or admission by Nelson that Ameritox or any other third party is not paying her fees.").

[34] Docket 16.

[35] Docket 119 at 8.

The Ninth Circuit has held that "[t]he attorney-client privilege ordinarily protects neither a client's identity nor information regarding the fee arrangements reached with that client."[36]  "Information regarding the amount paid for legal services or the form of payment ordinarily does not disclose the subject matter of the professional consultation."[37]   There is, however, an exception: the privilege may be invoked to protect fee arrangements "if disclosure would "convey[ ] information which ordinarily would be conceded to be part of the usual privileged communication between attorney and client."[38]

Ms. Nelson cites to a case from this District, *In re Grand Jury Subpoenas*, as holding that "fees and fee payer information are not discoverable material when disclosure 'would reveal information that is tantamount to a confidential professional communication.'"[39]  However, in that case, the court found the exception inapplicable, explaining that the decision which carved out the exception, *Baird v. Koemer*, "involved a 'unique factual situation[.]'"[40]   Ms. Nelson has not demonstrated that this narrow exception applies to the facts of this case.

Ms. Nelson further asserts that the information requested "is neither relevant nor necessary," as "Millennium already obtained evidence of [her] fee agreement in

---

[36] *Reiserer v. U.S.*, 479 F.3d 1160, 1165 (9th Cir. 2007) (quoting *United States v. Horn*, 976 F.2d 1314, 1317 (9th Cir. 1992)).

[37] *Horn*, 976 F.2d at 1317.

[38] *Horn*, 976 F.2d 1314, 1317 (9th Cir. 1992) (quoting *Baird v. Koerner*, 279 F.2d 623, 632 (9th Cir. 1960)).

[39] Docket 116 at 15 (quoting *Grand Jury*, 858 F. Supp. 132 (D. Ariz. 1994)).

[40] *Grand Jury*, 858 F. Supp. at 134 (quoting *United States v. Sherman*, 627 F.2d 189, 191 (9th Cir. 1980)).

discovery," most recently at her September 2012 deposition.[41]   However, Millennium asserts that the September deposition testimony was "in an unrelated lawsuit that does not bear on [Ms. Nelson's] fee arrangement in this case" and for purposes of this motion, this Court assumes that to be true.[42]

Accordingly, the Court will grant Millennium's request.  Ms. Nelson shall produce all documents responsive to Millennium's Requests for Production 26, 28, and 29.  If there are specific billing entries within those documents that Ms. Nelson believes are privileged, Ms. Nelson may redact that privileged material in the response she provides to Millennium, but she shall submit a copy of the full records to the Court for in camera review together with a copy of the redacted materials that were provided to Millennium. Production and any in camera submission shall be made by noon on May 20, 2013.

The Court further finds that Ms. Nelson has sufficient custody and control over these documents to obtain them from the law firms in question.[43]

## CONCLUSION

For the foregoing reasons, Millennium's Motion to Compel is GRANTED in part, DENIED in part, and DEFERRED in part, as follows:

1. The Motion is GRANTED with respect to Ms. Nelson's cellphone records.  Ms. Nelson shall produce her unredacted cellphone records for the period June 1, 2011 through March 31, 2012 and deliver them to Millennium by **12:00 p.m. on May 20, 2013**.

---

[41] Docket 116 at 16.

[42] Docket 119 at 8.

[43] *See* Fed. R. Civ. P. 34(a)(1).

2. The Motion is DENIED with respect to items 39-40 of Ms. Nelson's March 12, 2013 privilege log.

3. The Motion is DEFERRED with respect to items 12-17, 19-22, and 35-36 of Ms. Nelson's March 12, 2013 privilege log until after in camera review.  Ms. Nelson is ordered to submit these documents to the Court for in camera review by **12:00 p.m. on May 20, 2013**.

4. The Motion is GRANTED with respect to Millennium's Requests for Production 26, 28, and 29.  If any specific redactions of privileged entries are made, a complete unredacted copy of such documents shall be sent to the Court for in camera review, together with a copy showing the redacted version that was served on Millennium.  Production and any in camera submission shall be made by **12:00 p.m. on May 20, 2013**.

5. Any documents submitted for in camera review shall be sent by e-mail to the Court's secure e-mail account, gleasonproposedorders@akd.uscourts.gov.

DATED this 17th day of May, 2012.

*/s/ Sharon L. Gleason*
United States District Judge