1  Karin S. Aldama (No. 023816)
   Perkins Coie LLP
2  2901 N. Central Avenue
   Suite 2000
3  Phoenix, Arizona 85012-2788
   KAldama@perkinscoie.com
4
   Telephone: 602.351.8000
5  Facsimile: 602.648.7000

6  Michael R. Osterhoff (*pro hac vice*)
   Perkins Coie LLP
7  131 South Dearborn Street, Suite 1700
   Chicago, Illinois 60603-5559
8  MOsterhoff@perkinscoie.com

9  Telephone: 312.324.8400
   Facsimile: 312.324.9400
10
   Attorneys for Subpoenaed Non-Party
11 Ameritox Ltd.

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| KELLY NELSON, an individual,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>MILLENNIUM LABORATORIES, INC., a California Corporation; JASON BRISTOL, an individual,<br><br>　　　　　　Defendants. | Case No. 2:12-cv-01301-SLG<br><br>**AMERITOX, LTD.'S REPLY IN SUPPORT OF ITS COMBINED MOTION TO QUASH MILLENNIUM LABORATORIES, INC.'S SUBPOENA *DUCES TECUM* TO PERKINS COIE LLP OR FOR A PROTECTIVE ORDER, AND FOR PROTECTIVE ORDER FROM MILLENNIUM LABORATORIES, INC.'S SUBPOENAS *DUCES TECUM* TO K&L GATES LLP AND PAUL SHAW** |

Non-Party Ameritox, Ltd. ("Ameritox"), by and through its attorneys Perkins Coie LLP, hereby submits its Reply in Support of Its Combined Motion to Quash Millennium Laboratories, Inc.'s ("Millennium") Subpoena *Duces Tecum* to Perkins Coie LLP ("Perkins Coie") or for a Protective Order, and for a Protective Order from Millennium's Subpoenas *Duces Tecum* to K&L Gates LLP ("K&L Gates") and Paul Shaw ("Shaw").

## I. INTRODUCTION

Millennium has issued nearly 10 subpoenas nationwide seeking the privileged communications of Allied Counsel—regardless of the fact that those communications are privileged and occurred *after* Kelly Nelson ("Nelson") brought her employment claims against Millennium based on its illegal practices. Millennium does so hoping one court will break ranks and order such privileged communications to be produced. Ameritox respectfully requests this Court hold the line.

Millennium issued subpoenas for the production of documents and a deposition to Sterling Partners and Steven Taslitz in the Northern District of Illinois seeking privileged communications. The Court in Illinois granted their Motion to Quash. *See* Ex. U. Millennium issued a subpoena to Conover & Company Communications, Inc. ("Conover") in the District of Maine seeking privileged communications. The Court in Maine granted Conover's Motion to Quash. *See* Ex. P at Dkt. 18. Millennium issued a subpoena to Gregory Howard ("Howard") in the District of Massachusetts also seeking identical information. Howard's Motion to Quash was granted. *See* Ex. O. To date, no court has ordered such information be produced. To the contrary, Millennium has been admonished for its use of subpoenas in an attempt to "back door" discovery against Ameritox in its litigation with Millennium pending in the Middle District of Florida.

Millennium disingenuously claims that no common interest exists between Nelson, Jodie Strain ("Strain"), Edward Zicari ("Zicari"), and Ameritox and their respective attorneys ("Allied Counsel") because the cases are separate litigations that, with the exception of Ameritox, include claims related to plaintiffs' wrongful terminations from Millennium. Millennium, however, turns a blind eye towards the respective Complaints

that on their faces assert claims based on the same illegal billing practices by Millennium. The Allied Counsel represent they share a common interest and common legal goal and the communications at issue were developed in anticipation of, and during, litigation and constitute counsels' mental impressions, opinions, conclusions, and legal theories. The common interest doctrine exists precisely to protect such communications, and the Allied Counsel should be afforded this protection. Ameritox's Motion should thus be granted.

**II.     ARGUMENT**

    **A.     Ameritox and Millennium Engaged in Meaningful Meet and Confers.**

Millennium disingenuously suggests to this Court that Ameritox's "moving counsel" did not meet and confer. The long history of Millennium's attempts to obtain the alleged documents requested in the *Nelson* subpoenas to Perkins Coie, K&L Gates, and Shaw shows that Ameritox and its moving counsel participated in personal consultations with Millennium's counsel to engage in meaningful meet and confers and to discuss the disputed issues *ad nauseum*. *See Reishus v. Almaraz*, No. CV-10-0760-PHX-LOA, 2011 WL 109569, at *1 (D. Ariz. Jan. 12, 2011) ("personal consultation" for a proper meet and confer under L.R. Civ. 7.2(j) is satisfied with "telephone communication").

First, in the Florida Litigation, on October 3, 2012, Ameritox objected to Millennium's requests for production of documents relating to Ameritox's alleged communications with the attorneys for Zicari, Nelson, and Strain because any such communications are privileged. *See* Ex. A at Reqs. Nos. 17 & 19-20. On February 6, 2013, Millennium acknowledged Ameritox's privilege objections. *See* Ex. B at 2. Additionally, after certain of Ameritox's attorneys moved from K&L Gates to Perkins Coie, on April 5, 10, and 12, 2013, Perkins Coie held telephone conferences with Millennium's counsel Peter Simshauser at Skadden, Arps, Slate, Meagher, & Flom regarding Ameritox's objections based on the common interest privilege and whether Ameritox would produce a privilege log. *See* Ex. C at ¶¶ 3-8; Exs. C-1 & C-2. Thus, Millennium's representation to this Court that "moving counsel *never* initiated or were involved in *any* meet-and-confer effort" is simply wrong. Dkt. 112 at 5 (emphasis in

original).

Second, on February 20, 2013, Shaw, a partner at K&L Gates, timely responded to the *Nelson* subpoena Millennium served upon him and objected to the requests, *inter alia*, based on the common interest privilege. *See* Ex. D at General Obj. 2. Third, on March 5, 2013, Ameritox objected based on the allied litigant privilege and the common interest privilege to a subpoena that Millennium served upon it in *Strain v. Millennium*, Cause No. 12-02-02276-CV, in the District Court of Montgomery County, Texas, 284th Judicial District. *See* Ex. E at Reqs. Nos. 1-17. Before Ameritox filed its Motion to Quash the *Nelson* subpoenas with this Court, on April 15, 2013, Ameritox moved to quash the *Strain* subpoena to K&L Gates (which is substantially similar to the *Nelson* subpoena, *compare* Dkt. 69 at Exs. A-C at Reqs. Nos. 1-7 & Ex. E at Reqs. Nos. 1-17) (*see* Ex. F), while K&L Gates also timely moved to quash the *Strain* subpoena that same day based, *inter alia*, upon the allied litigant privilege and the common interest privilege, and that motion is still pending. *See* Ex. H at ¶ 3; *see* Ex. H-1; Ex. H-2. Before K&L Gates filed its motion, on April 14, 2013, K&L Gates and Millennium met and conferred via telephone regarding the subpoena and motions to quash and for a protective order. *See* Ex. H at ¶ 3.

On April 18, 2013, Millennium moved to compel Ameritox to respond. *See* Ex. G. Millennium represented to the Texas Court that it had met and conferred before filing the Motion (*see id.* at 17), and the *Strain* and *Nelson* subpoenas to Ameritox are substantially similar. *Compare* Dkt. 69 at Exs. A-C at Reqs. Nos. 1-7 & Ex. E at Reqs. Nos. 1-17. The Texas Court held an oral argument on April 30, 2013, and the motion is still pending.

Fourth, after K&L Gates served its April 5, 2013, objections to the subpoena in this *Nelson* case, K&L Gates conducted two meet and confer telephone conferences with Millennium on April 11 and 18, 2013, regarding, *inter alia*, K&L Gates's objections based on the common interest doctrine. *See* Ex. I at ¶¶ 8-9; *see also* Ex. H at ¶¶ 5-7. During these calls, K&L Gates indicated that it would produce a privilege log upon client

Ameritox's approval.[1] *See id.* at ¶¶ 6-7; *see also* Ex. I at ¶ 6. After these meet and confers, K&L Gates informed counsel for Millennium that it would not produce a privilege log as such a log would reveal litigation strategy and was irrelevant to the claims and defenses of the case in light of Millennium's own position in the litigation. *See* Ex. H at ¶ 8. Millennium considered the production of a privilege log to be the deciding factor in resolving the dispute because on April 22, 2013, Millennium's counsel Peter Simshauser said that if Millennium did not receive a privilege log from K&L Gates "within the next day or two" it would file a motion to compel with this Court. *See id.* at ¶ 9; *see also* Ex. H-4. Thus, Ameritox filed on April 23, 2013, this Motion to protect its privileged information on all three subpoenas. *See Firetrace USA, LLC v. Jesclard*, No. CV-07-2001, 2008 WL 5146691, at *2 (D. Ariz. Dec. 8, 2008).

The *Nelson* subpoenas to Perkins Coie, K&L Gates, and Shaw are substantially similar to the subpoenas for which other motions to compel and quash had been filed. *Compare* Dkt. 69 at Exs. A-C with attached Ex. D, Ex. E, & Ex. H-2. In light of the multiple discovery requests and subpoenas, Ameritox and its counsel have, as discussed above, dedicated significant efforts to engage in meet and confers with Millennium's counsel.[2] Millennium cannot genuinely dispute that it has known for months that Ameritox and Millennium are at an impasse on these discovery issues.[3]

---

[1] During the April 11, 2013 conference, K&L Gates was still counsel of record for Ameritox in the Florida Litigation, such that Millennium knew K&L Gates was counsel for Ameritox during this call. *See* Ex. I at ¶ 9. While K&L Gates withdrew as counsel of record on April 18, 2013 (*see* Ex. I-4; Ex. I-5), its duty to protect its client Ameritox's privileged information continues.

[2] While the number of motions filed on the common interest doctrine indicates that Millennium and Ameritox are unlikely to reach an agreement, if this Court decides that additional meet and confers are needed, Ameritox should be afforded the opportunity to refile its motion thereafter. *See Reishus*, 2011 WL 109569, at *1.

[3] Millennium's cited cases are inapposite. *See Whiting v. Hogan*, No. 12-CV-08039-PHX-GMS, 2013 WL 1047012, at *2-3 (D. Ariz. Mar. 14, 2013) (a party was sanctioned for his "obstinate approach" that "constituted bad faith under the circumstances" where the party refused to engage in a "personal consultation"); *see also Krueger Invs., LLC v. Cardinal Health 110, Inc.*, No. CV 12-0618-PHX-JAT, 2012 WL 3264524, at *3 (D. Ariz. Aug. 9, 2012) (motion to compel was improper where the plaintiff failed to engage in "personal consultation" before filing the motion). Unlike the movants in *Whiting* and *Krueger*, Ameritox participated in several personal consultations.

-4-

Moreover, based on the substantial similarity of all of these subpoenas, and the identical requests to Perkins Coie, K&L Gates, and Shaw in the *Nelson* subpoenas, Millennium's suggestion that K&L Gates waived its objections is misplaced.[4] Millennium has been on notice of these objections since October 3, 2012, and to deem K&L Gates's objections waived based on an inadvertent one week delay would be prejudicial to Ameritox, which has continually sought to protect its privileged information.[5]

### B. Millennium Failed to Refute the Applicability of the Common Interest Privilege to the Requested Alleged Documents.

Ameritox asserted in its Motion that Arizona state law on the common interest doctrine applies. Ameritox respects this Court's holding in its May 17, 2013 Order that the common interest doctrine under federal law applies to this case,[6] and the legal principles governing application of the common interest doctrine are, in any event, the

---

[4] A non-party's failure to serve timely objections to a subpoena will not bar consideration of such objections "in unusual circumstances and for good cause shown." *See, e.g., Leader Tech., Inc. v. Facebook, Inc.*, No. C10-80028, 2010 WL 761296, at *2 (N.D. Cal. Mar. 2, 2010) (excusing failure to file timely objections where delay was not in bad faith and counsel for the responding party was in contact with opposing counsel concerning response). "Courts have found unusual circumstances where: (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena." *McCoy v. Southwest Airlines Co., Inc.*, 211 F.R.D. 381, 385-86 (C.D. Cal. 2002) (while the subpoenaed party untimely objected to the subpoena, the Court considered whether a protective order under Rule 26(c) should be entered for good cause based on the objection that the subpoenaed documents are attorney-client privileged). In its Motion, Ameritox explained in detail how Millennium's document requests are cumulative of party discovery, are overbroad, and seek irrelevant and privileged materials. *See* Dkt. 69 at 13-16; *see also Huene v. U.S. Dept. of Treasury*, No. 2:11-cv-2110, 2013 WL 417747, at *5 (E.D. Cal. Jan. 31, 2013) (objections to subpoena not waived in light of overbroad nature of subpoena). Likewise, once Millennium inquired into the status of K&L Gates's response to the *Nelson* subpoena, K&L Gates immediately prepared its response and objections thereto. *See* Ex. I at ¶ 6. Ameritox and its counsel have acted in good faith and conferred extensively regarding the documents Millennium seeks. *See, e.g., Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996).

[5] Millennium's cited case *Madeline L.L.C. v. Street*, No. 09-80705-MC, 2009 WL 1563526, at *1-2 (S.D. Fla. June 3, 2009), is distinguishable because unlike here, the subpoenaed party did not claim the protection of any privilege or immunity.

[6] This Court found that the federal laws of privilege apply because this case concerns federal claims with pendent state law claims. Dkt. 120 at 4. Diversity of citizenship also exists between the parties such that an argument can be made that Arizona privilege laws apply. *See In re California Public Utilities Comm'n*, 892 F.2d 778, 782 (9th Cir. 1989).

same under Arizona and federal law. *See Southern Union Co. v. Southwest Gas Corp.*, 205 F.R.D. 542, 546 (D. Ariz. 2002) ("On this issue [of the common interest doctrine], the parties have relied on both Arizona and federal law, which because taken from the common law, is generally the same.").[7] Under either the federal or Arizona common interest doctrine, the documents Millennium seeks are protected.

### 1. Millennium Desperately Misconstrues the Texas Order.

Obviously realizing the impact of the March 28, 2013 Order from the 284th Judicial District Court of Montgomery County, Texas, *In re Jodie Strain*, Cause No. 13-02-02158, Millennium makes a tortured interpretation of the Order to suggest that it did not preclude the discovery that Millennium attempts to obtain through the *Nelson* subpoenas to Perkins Coie, K&L Gates, and Shaw. In Strain's Original Petition for a Protective Order, she specifically requested that documents regarding alleged communications between her and/or her counsel and Allied Counsel be found protected under the allied litigant privilege. *See* Dkt. 69 at Ex. M at 9.

The Texas Court specifically addressed any alleged communications between Strain and her attorneys and Zicari and his attorneys because the subpoena to Strain was issued in Zicari's case with Millennium and found that the allied litigant privilege applied. *See id.* at Ex. G at 1-2. The Texas Court's omission of any discussion in the March 28, 2013 Order of communications between Strain and Ameritox or Nelson as the other members of the Allied Counsel was simply an oversight. Thus, Strain filed her Motion for Clarification which is still pending with the Texas Court, along with Ameritox's motion for a protective order on the *Strain* subpoena to K&L Gates and Millennium's motion compel Ameritox to respond to the *Strain* subpoena, all of which concern

---

[7] *See also United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003) (the common interest doctrine under federal law "applies where (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived"); *Arizona Indep. Redist. Comm'n v. Fields*, 206 Ariz. 130, 141-42 (App. 2003) (the common interest under Arizona law applies "[i]f two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter").

objections based on the allied litigant privilege. *See* Dkt. 69 at Ex. N at 2-4.

### 2. A Common Interest Exists Between the Allied Counsel.

Millennium ignores the allegations pled in the respective Complaints of Strain, Nelson, Zicari, and Ameritox against Millennium to suggest that there is no overlap between these lawsuits and that they are only seeking to prevail against Millennium. In this Court's May 17, 2013 Order, it deferred its ruling on the applicability of the common interest doctrine. Dkt. 120 at 9, 13. Further analysis shows that Nelson, Strain, Zicari, and Ameritox share common claims, litigation strategies, and goals in their respective lawsuits as all of their cases concern Millennium's illegal business practices and policies:

- Nelson, Strain, and Zicari are former Millennium employees and assert they were wrongfully terminated in retaliation for refusing to violate state and federal healthcare laws and refusing to participate in Millennium's billing practices and policies, including requiring doctors to order medically unnecessary testing, providing free POCT cups, and offering in-office chemical analyzers at a rate below commercial cost to induce physician referrals; and

- Ameritox asserts that Millennium engages in unfair and illegal business practices for the purpose of generating business, including encouraging medically unnecessary testing, offering lucrative business arrangements to physicians, and illegally providing free or below market prices on supplies such as POCT cups and in-office chemical analyzers.

*Compare* Dkt. 1 at ¶¶ 69-79 *with* Ex. J at *¶¶* 14, 20-21 *with* Dkt. 69 at Ex. D *with* Dkt. 69 at Ex. K at ¶¶ 23-30 & 49-54. Nelson, Strain, Zicari, and Ameritox each claim and will show that Millennium's business practices are illegal and unfair; they thus have common legal goals. Millennium's suggestion that for the common interest to apply lawsuits must be identical or the outcome of one lawsuit must depend on that of another is incorrect. *Bergonzi*, 216 F.R.D. at 495 (the common interest doctrine "does not require a complete unity of interests among the participants, and it may apply where the parties' interests are adverse in substantial respects"); *see also Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 327 (N.D. Ill. 2008) ("The common interest rule is not limited to parties who are perfectly aligned on the same side of a single litigation, rather the party asserting the privilege must simply demonstrate actual cooperation toward a common legal goal . . . ."). The various plaintiffs' commonality of interest with respect to

-7-

1 | Millennium's business practices is sufficient, and they all seek a common legal goal.

2 | By discussing, and arriving at, mental impressions, opinions, conclusions, and legal theories with Allied Counsel, Ameritox's counsel sought to strengthen Ameritox's legal position in the Florida Litigation. Perkins Coie, K&L Gates, and Shaw's privileged communications with Allied Counsel, all of which occurred *after* Ameritox retained them, were made for the purpose of facilitating the rendition of professional legal services to Ameritox. *See* Ex. K at ¶¶ 2-3; *see also* Ex. L at 1-3. These communications were developed in anticipation of, and during, litigation and constitute mental impressions, opinions, conclusions, and legal theories. *See* Ex. K at ¶ 3. Also, the Allied Counsel communications concern Ameritox's claims against Millennium in the Florida Litigation. *Id.* Nelson's counsel agrees that a common interest exists and submitted a declaration thereon in its opposition to Millennium's recent emergency motion to compel Nelson; Millennium's insinuation to the contrary is unfounded. *See* Dkt. 116 at Ex. H at ¶¶ 2-4.

Moreover, contrary to Millennium's assertion, as this Court acknowledged in the May 17, 2013 Order, the Allied Counsel do not need to disclose a written common interest agreement for the doctrine to apply. *See* Dkt. 120 at 6-7. The sworn declarations from Nelson, Ameritox, and Strain's respective counsel are sufficient to establish the existence of a common interest. *See* Ex. K at ¶¶ 2-3; Ex. L at 1-3; Ex. S at ¶¶ 2-4; Ex. T at 1-3; *see also Hydranautics v. Filmtec Corp.*, No. 93CV0476, 2003 WL 23358200, at *3 (S.D. Cal. Aug. 25, 2003) (attorney declarations sufficient to establish common interest).

**3. The Requested Documents Are Protected under the Attorney-Client Privilege or Work Product Doctrine.**

The Allied Counsel have represented that the alleged documents Millennium seeks would be protected under the common interest doctrine because they are communications that are protected under the attorney-client privilege and/or work product doctrine. Additionally, Millennium has misconstrued Federal Rule of Civil Procedure 45(d)(2) to suggest that the subpoenaed parties should have already produced a privilege log. Under "Rule 45(d)(2)(A), a privilege log is not required" and "[a]ll that is required is a

-8-

description of 'the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." *Leasure v. Willmark Comty., Inc.*, No. 11-cv-0443-L (DHB), 2012 WL 4361555, at *4 (S.D. Cal. Sept. 21, 2012). Ameritox, Perkins Coie, K&L Gates, and Shaw have provided such a description of the documents protected under the common interest doctrine. However, if this Court determines that a privilege log is needed to determine the extent of the applicability of the common interest privilege, Ameritox respectfully asks to be permitted to submit a privilege log for *in camera* review to preserve Ameritox's privileged information that it is concerned would be disclosed through such log, including detailed insight into Allied Counsel's litigation strategy.[8]

### C. Millennium's Preoccupation with Ameritox Demonstrates that the Requested Alleged Documents Are Irrelevant.

Millennium misconstrues Ameritox's undue-burden objection to suggest it concerns the time needed and potential expense to produce any alleged documents. Rather, Ameritox explained in detail how it would be unduly burdened as all requests in the *Nelson* subpoenas are cumulative and duplicative of party discovery, overbroad, and irrelevant to the claims and defenses pending in this case. *See* Dkt. 69 at 13-16. Millennium's bald allegations of relevancy are insufficient to meet its burden.

Millennium alleges that Ameritox is a "unique repository" for "documents and communications exchanged between Perkins Coie [or K&L Gates] and any third party," and "agreements and/or communications between Perkins Coie [or K&L Gates] and Conover," but fails to show how such documents are relevant to its pending defenses. Dkt. 112 at 15-16. Millennium admitted that "the only information that could conceivably be relevant to [Nelson's] employment claims would be contained in Millennium's documents, not those of any third parties . . . .," so requests for communications between

---

[8] Millennium also requested documents that are protected by the common interest doctrine by serving Strain with a *Nelson* subpoena from the Southern District of Texas. *See* Ex. M. Strain moved to quash the subpoena based on, *inter alia*, the common interest doctrine and the allied litigant privilege. *See* Ex. N at 6-10. Strain did not originally produce a privilege log, but the Court later allowed Strain to submit a log for *in camera* review.

-9-

1 Ameritox's attorneys and third parties cannot be relevant. Dkt. 58 at 10. Millennium does not dispute that Nelson is not mentioned until the thirty-sixth paragraph of the Reuters article such that it is not publicizing her lawsuit. *See* Dkt. 69 at Ex. U.

Millennium's true motive is evident from its Opposition. While Millennium admits Nelson was interviewed by a Reuters reporter "at the urging of her lawyers," Millennium seeks discovery from Ameritox's attorneys because it speculates (a) that "Nelson, at the instigation of Ameritox" and Conover was interviewed for a November 16, 2012 Reuters article; (b) that "at Ameritox's request Nelson has met with its counsel in connection" with the Florida Litigation; and (c) that the "grand jury's efforts have been encouraged by Ameritox"; as it admits, its subpoenas are "[a]imed [a]t [d]iscovering [t]he [f]ull [e]xtent [o]f Ameritox's [i]nvolvement . . . ." Dkt. 112 at 4-5. But none of Millennium's pending claims concern Ameritox, and it does not dispute that it is improperly seeking the discovery to support defenses or claims in the Florida Litigation.

On May 16, 2013, the District of Maine granted Conover employee Howard's motion to quash a subpoena from Millennium in this case because, *inter alia*, "Millennium's preoccupation with Ameritox in its written submissions to this court in connection with the subpoena served on Howard raises the possibility that it seeks to use the subpoena as a 'back door' route of discovery against Ameritox" for the Florida Litigation. *See* Ex. O at 3 n.3. The District of Maine saw no reason to depart from the District of Massachusetts's Order granting the motion to quash the *Nelson* subpoena that Millennium also served upon Conover seeking similar discovery of Ameritox, including the same privileged communications. *See id.* at 1-4; *see also* Ex. P at Dkt. 18; Ex. Q at 15:13-20. The District of Massachusetts reasoned that Millennium had "other mechanisms" to obtain the non-privileged and relevant discovery because Nelson "could be re-deposed on these issues . . . ." Ex. Q at 12:15-16, 15:13-14.[9] Conveniently,

---

[9] Millennium misconstrues the Massachusetts Order to suggest third-party discovery against Ameritox was the "other mechanisms" through which discovery could be obtained. The Court was clear that Millennium could seek party discovery from Nelson to obtain the information it seeks, but not privileged communications. *See id.* at 1-15.

1 Millennium is scheduled to re-depose Nelson on May 21, 2012, and can seek discovery directly from Nelson at that time regarding any alleged bias or any statements she made to Conover or any other person about her employment at Millennium. *See* Dkt. 112 at 3 n.1. The sound reasoning of the Districts of Massachusetts and Maine should be followed here.

Ameritox is aware of this Court's May 17, 2013 Order in which it ordered Nelson to produce alleged documents regarding any alleged fee agreements, but Ameritox respectfully argues to this Court that Ameritox should not be ordered to produce any alleged fee agreements, bills, or invoices as those have already been produced by Nelson. *See* Dkt. 120 at 9-12. Thus, this issue is moot. Millennium has not proffered any explanation as to why it needs "[d]ocuments internal to Ameritox and its counsel relating to payments of Nelsons' attorneys' fees." Dkt. 112 at 8. As the District of Maine noted regarding internal emails between Conover employees, for which Millennium alleged Howard was a "unique repository," such documents "may not meet basic discovery relevance requirements with respect to Nelson's action against Millennium . . . ." Ex. O at 3. Any alleged internal documents between Ameritox and its counsel relating to any payment of Nelson's attorneys' fees would be attorney-client privileged or work product.

To the extent Millennium is seeking "documents that [Nelson allegedly] obtained when working for Millennium and retained post-termination" (Dkt. 112 at 10), Millennium can only be seeking to obtain early discovery on the recent Complaint it filed against Nelson in Maricopa County, Arizona. *See* Ex. R. Finally, Millennium's complaint that Nelson has refused to produce similarly requested documents should have no bearing on this Motion. Third parties should not be unduly burdened when Millennium can seek to enforce its discovery requests through party discovery.

### III. CONCLUSION

For the forgoing reasons, Ameritox respectfully asks this Court to quash the subpoena to its attorneys Perkins Coie or enter a protective order thereon precluding it from having to respond, and to enter a protective order precluding its attorneys K&L Gates and Shaw from having to respond to the respective subpoenas issued to them.

| | | |
|---|---|---|
| Dated: May 20, 2013 | | Respectfully submitted, |

by: s/Karin S. Aldama
Karin S. Aldama
**Perkins Coie LLP**
2901 N. Central Avenue
Suite 2000
Phoenix, Arizona 85012-2788

Michael R. Osterhoff
**Perkins Coie LLP**
131 South Dearborn Street, Suite 1700
Chicago, IL 60603-5559

*Attorneys for Non-Party Ameritox, Ltd.*

# **CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2013, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

>Mark Ogden
>mogden@littler.com
>Christie L. Kriegsfeld
>ckriegsfeld@littler.com
>LITTLER MENDELSON, P.C.
>Camelback Esplanade
>2425 East Camelback Road, Suite 900
>Phoenix, Arizona 85016
>*Attorneys for Defendants*
>
>Craig P. Cherney
>ccherney@edwardsandcherney.com
>Laura J. Edwards
>ledwards@edwardsandcherney.com
>EDWARDS & CHERNEY, LLP
>14300 N. Northsight Blvd., Suite 129
>Scottsdale, Arizona 85260
>*Attorneys for Plaintiff*
>
>Barry M. Walker
>bmw@walkertriallawyers.com
>WALKER TRIAL LAWYERS LLP
>31618 Railroad Canyon Rd., Suite 1
>Canyon Lake, California 92587
>*Attorneys for Plaintiff*

                                              s/ Jessica N. Griffith

LEGAL26789234.1