**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| KELLY NELSON,<br><br>                    Plaintiff,<br><br>     v.<br><br>MILLENNIUM LABORATORIES, INC., a<br>California corporation; JASON BRISTOL,<br>an individual; and DOES 1 – 10, inclusive,<br><br>                    Defendants. | Case No. 2:12-cv-01301-SLG<br>SEALED |

## ORDER ON MOTION RE SUMMARY JUDGMENT

Before the Court at Docket 242 is Defendant Millennium Laboratories, Inc.'s [Sealed] Motion for Summary Judgment, or Alternatively Partial Summary Judgment.  At Docket 244, Plaintiff Kelly Nelson opposed the motion, and at Docket 251, Millennium replied.  On January 24, 2014, the Court heard oral argument on the motion.[1]  Having considered the documents filed with the Court, the law, and the arguments of counsel, the Court will grant in part and deny in part the motion for the reasons set forth herein.

---

[1] Docket 258 (Transcript).

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Millennium's Urine Testing Business.

Millennium is in the business of providing clinical laboratory testing to medical professionals.[2]  Millennium primarily tests urine specimens to determine the presence and quantity of certain illegal and prescription drugs.[3]  These specimens are transported to Millennium for testing by using a cup.[4]  There are two types of cups: (1) generic "clear cups," which are basic "clear" cups that can be sealed for shipment, but provide no information at the point of care (i.e., the physician's office);[5] and (2) point-of-care-testing cups ("POCT" cups), which contain testing strips and provide immediate but preliminary qualitative results (i.e., yes or no) concerning the presence or absence of a limited number of drugs.[6]

Medicare reimburses for certain urine screen tests with both the generic clear cups and POCT cups.  Medicare reimbursement for urine screen tests are paid to both Millennium and the doctor, or sometimes just Millennium if the doctor elects not to bill or seek reimbursement for POCT screening.[7]  With some health care providers,

---

[2]  Docket 243 ¶ 1 (Millennium Statement of Facts in Support of MSJ, herein "SOF").  The Court refers to Millennium's SOF only where Nelson agrees that the facts are undisputed.  *See* Docket 245 (Plaintiff's Controverting Statement of Facts, herein "PCSOF").  On this motion for summary judgment, the Court views the facts in the light most favorable to Nelson, the non-moving party, and adopts Nelson's PCSOF where supported by evidence in the record.  *See infra*, Summary Judgment Standard at p. 12.

[3]  SOF ¶ 1.

[4]  SOF ¶ 1.

[5]  SOF ¶¶ 7-8.

[6]  SOF ¶¶ 10-11.

[7]  PCSOF ¶ 162.

2:12-cv-01301-SLG*, Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 2 of 40

Millennium enters into "cup agreements," where in exchange for furnishing the healthcare provider with free POCT cups, the provider agrees not to seek Medicare reimbursement for point-of-care testing and to return all the POCT cups to Millennium.[8] Otherwise, Millennium should charge its customers fair market value for the POCT cups so as not to implicate federal anti-kickback laws.[9]

## II.   Nelson's Employment with Millennium.

In June 2009, Millennium offered Nelson a position as a Senior Sales Specialist, a sales representative.[10]  On June 15, Nelson began her employment with Millennium.[11] Nelson was hired as an employee at-will, and would receive a base salary plus commissions based on the number of urine specimens sent to Millennium for testing by physicians in her territory.[12]

Effective August 1, 2010, Nelson was promoted to Regional Sales Manager ("RSM") for the Southwest Region.[13]  She reported to Ryan Uehling.[14]  As RSM,

---

[8]  SOF ¶ 3.

[9]  PCSOF ¶¶ 2, 4.

[10]  SOF ¶ 15.

[11]  SOF ¶ 18.

[12]  SOF ¶ 15.

[13]  SOF ¶ 19.

[14]  SOF ¶ 19.

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 3 of 40

Millennium expected Nelson to recruit, hire, and train new sales representatives.[15] Nelson supervised fourteen sales representatives in the Southwest Region.[16]

In September 2011, Nelson appeared on television as a Millennium spokesperson.[17]  There is no evidence that Nelson received any negative or critical feedback from her employer up to that time.  But in the fall of 2011, Nelson's sales region, the Southwest Region, ranked last out of Millennium's regions in adding new accounts.[18]  And in 2011, the Southwest Region ranked fifth out of seven in terms of performance.[19]  On November 16, 2011, Millennium terminated the employment of Nelson's supervisor, Uehling.[20]  Jason Bristol, Regional Vice President of Sales, took over supervisory responsibilities for the Southwest Region.[21]  On November 21, 2011, Nicole Moberg became Nelson's direct supervisor; Moberg reported to Bristol.[22]

On December 4, 2011, Moberg emailed Nelson providing a "recap of some observations" and "expectations . . . for the SW Team."  In part, Moberg wrote:

> I feel you really understand this business well, it's a strength that I admire in you and I'd like to see you share that knowledge more with reps . . . .

---

[15] SOF ¶ 22.

[16] SOF ¶ 20.

[17] PCSOF ¶ 146.

[18] SOF ¶ 28.

[19] SOF ¶ 29.

[20] SOF ¶ 34.

[21] SOF ¶ 35.

[22] SOF ¶ 37.

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 4 of 40

> [E]veryone in the region basically has 30-60 days to prove their worth to
> the company including the management team.  In fact, Howard, Jim, Liz,
> Jeanne, etc. all expect these results from ALL of us.  The best will shine
> during this time, the bad will weed themselves out . . .
>
> Kelly, Millennium needs tremendous effort from you NOW more than ever.
> It's clear that you had very little direction, guidance, and support up to this
> point, which is very unfortunate, however, you still have to take
> responsibility for the region. . . . There are no excuses for where we are at
> this point, it's all about looking forward, that's why the windshield is bigger
> than the rear view mirror, what's in front of you is far more important.  This
> position is yours if you want it, so show us how bad you want it.  The
> Western region will produce because we will have the right people in place
> with the right attitude, the right heart and the right hustle.[23]

The December 4 email included suggestions for Nelson's professional improvement.

Nelson recognized this as, in part, a form of criticism of her job performance.[24]

Gilbert Lopez was a member of Nelson's Southwest Region team.  On December

6, 2011, Bristol spent the day with Lopez in El Paso, Texas on a "ride-along" to visit with

Lopez's customer contacts.[25]  During the ride-along, Bristol and Lopez visited El Paso

Orthopaedic.  According to Lopez, after they had left that facility, Bristol told Lopez to

"Give them some cups."  Lopez responded, "Okay.  Do we charge them?"  And Bristol

said, "No, let them get started."  Lopez never gave the orthopedic clinic any cups.[26]

Later that same day, Lopez spoke with Nelson and told her about his conversation with

Bristol.[27]

---

[23]  Ex. 21 to Millennium MSJ: 12/4/11 email Moberg to Nelson.

[24]  Ex. B to Nelson Opp'n: 5/21/13 Nelson Dep. at 336:8-338:19.

[25]  SOF ¶ 55.

[26]  Ex. 22 to Millennium MSJ: 2/15/13 Lopez Dep. at 45:8-23.

[27]  Ex. 22 to Millennium MSJ: 2/15/13 Lopez Dep. at 45:24-47:7.

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 5 of 40

At her deposition, Nelson repeatedly testified that she had called Moberg on the evening of December 6, 2011 to report Bristol's statement to Lopez.[28]  However, the telephone records reveal that no substantive conversation could have occurred between Nelson and Moberg on the evening of December 6, 2011.  Nelson now asserts that the relevant conversations occurred on December 7, and it is undisputed that Nelson and Moberg spoke several times on December 7.[29]  Viewing the evidence in the light most favorable to Nelson, the Court accepts, for purposes of this motion, Nelson's assertion that her calls with Moberg occurred on December 7, 2011, as well as her description of those telephone calls.

Nelson testified that in the phone calls, she told Moberg that Bristol had told Lopez to give away free POCT cups to doctors in El Paso, Texas.[30]  At that time, Nelson believed that it was a violation of the federal anti-kickback law for Millennium to give away POCT cups to induce a healthcare provider to do business with it.[31]  Nelson also testified that she told Moberg that they "need to get this resolved immediately, and that [Nelson] would have to take further action."[32]  But Nelson also acknowledged that she did not know of any conversation between Bristol or Lopez and any doctor or health care provider about free cups.[33]  Nelson added that, at the time of her conversation with

---

[28]  *See* SOF ¶¶ 71-73 (disputed); PCSOF ¶ 73.

[29]  *See* SOF ¶¶ 71-86 (disputed); PCSOF ¶ 73.

[30]  Ex. B to Nelson Opp'n: 5/21/13 Nelson Dep. at 196:21-202:18.

[31]  Ex. B to Nelson Opp'n: 5/21/13 Nelson Dep. at 202:18-24, 207:3-18.

[32]  Ex. B to Nelson Opp'n: 5/21/13 Nelson Dep. at 197:3-22.

[33]  SOF ¶¶ 65-66; Ex. B to Nelson Opp'n: 5/21/13 Nelson Dep. at 203:21-25, 210:24-211:3. Nelson did testify, however, that in September 2009, Dara Goldfarb told Nelson generally that

2:12-cv-01301-SLG*, Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 6 of 40

Moberg, she did not know what someone would have to prove to find a violation of the federal anti-kickback law.[34]   But she testified that she had been told that "giving free bottles of wine and spa treatments . . . to earn the business that that was a violation of the anti-kickback law, and you can never give anything free to induce the business."[35] In an affidavit dated December 16, 2013 and submitted along with Nelson's opposition brief, she states that she also told Moberg in the December 2011 calls that offering or providing free cups "would represent a fraud on the U.S. government because the POCT cups would inevitably generate reimbursements to Millennium and/or the doctors."[36]

### III.   Millennium's Termination of Nelson's Employment.

On December 9, 2011, Millennium terminated Nelson's employment.   On December 30, 2011, Nelson's attorney sent Millennium a demand letter, alleging

---

"when an office would get upset . . . they would give a free box of cups."  Goldfarb did not provide any details about the number of cups, the name of any provider, or the number of times she may have provided cups.  Nelson did not report Goldfarb at that time, explaining that Nelson at the time "did not know if any of it was improper," although she now knows "[y]ou cannot give customers free boxes of cups."  SOF ¶¶ 132, 135-36; Ex. 1 to Millennium MSJ: 165:23-171:18.

[34]  Ex. B to Nelson Opp'n: 5/21/13 Nelson Dep. at 207:10-208:1.

[35]  Ex. B to Nelson Opp'n: 5/21/13 Nelson Dep. at. 208:2-209:2.

[36]  Docket 246 at 4-5 ¶ 20 (Nelson Aff.).  The Complaint alleges that "Millennium routinely submitted or cause to be submitted false claims to . . . federal health care programs," Docket 6 at 27-28 ¶ 199 (Compl.), and Nelson provides evidence that she received Stark Compliance documents.  *See* Ex. 13 to Millennium MSJ: Stark Compliance Acknowledgement.  But Nelson has not directed the Court to any evidence reflecting that she believed she was reporting to Moberg a potential fraud on the U.S. government.

2:12-cv-01301-SLG*, Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 7 of 40

unlawful, discriminatory treatment, threatening legal action, and seeking $175,000 for a release of all of her claims.[37]

On January 3, 2012, an email from Millennium's general counsel was distributed to approximately three dozen Millennium employees, advising them that a "formal complaint" had been received from Nelson, and instructing the employees that "[i]f they speak about any [Millennium] matters [to Nelson], they are in violation of their own employment/confidentiality agreements."[38]   His email added that "[i]f someone has a personal relationship with [Nelson], they can speak to her on those matters only."[39]

In February 2012, Nelson compiled a typewritten chronology that memorialized the events surrounding her employment and termination from Millennium.[40]   The chronology includes a description of the December 6/7 telephone calls with Moberg, but it does not mention any discussion of fraud on the government.  Nelson testified that the chronology excludes this because, at that time, Nelson was pursuing only a discrimination claim against Millennium.[41]

---

[37]  SOF ¶ 108; Ex. 24 to Millennium MSJ: 12/30/11 Demand Letter.

[38]  Ex. 26 to Millennium MSJ: 1/3/12 Email Millennium general counsel to five employees, and forwarded by Moberg to approximately 30 other people.  Nelson's opposition appears to dispute that the email was sent to Millennium employees only, calling the people on the distribution list "unidentified."  Docket 244 at 50 (Opp'n).  But Nelson's Complaint identified the recipients of the email as "Millennium employees," Docket 6 at 12-13 ¶ 82 (Compl.), Millennium asserts the recipients were Millennium employees, and no evidence in the record suggests otherwise.

[39]  Ex. 26 to Millennium MSJ: 1/3/12 Email Millennium general counsel to five employees, and forwarded by Moberg to approximately 30 other people.

[40]  See Ex. 17 to Millennium MSJ: Nelson Chronology; Ex. 1 to Millennium MSJ: 5/21/13 Nelson Dep. at 95:6-96:25.

[41]  Ex. B to Nelson Opp'n: 5/21/13 Nelson Dep. at. 198:3-199:1.

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 8 of 40

## IV.   Nelson Files an EEOC Complaint.

On January 24, 2012, Nelson filed a charge of sex- and age-based discrimination in violation of Title VII with the Equal Employment Opportunity Commission.[42]   On March 20, 2012, Nelson filed an amended EEOC Charge that also alleged retaliation in violation of Title VII.[43]

## V.   Nelson's Post-Millennium Employment.

In August 2012, about eight months after her termination from Millennium, Nelson obtained a job with Novo Nordisk.[44]   Nelson voluntarily left Novo Nordisk in March 2013.[45]

Nelson then formed a company called Aeon Medical LLC ("Aeon").  In January 2013, Aeon became a member of Advanced Medical Diagnostics, LLC ("AMD").[46]  On April 30, 2013, Kevin MacDonald, a manager at AMD, wrote Nelson a letter that removed Aeon as a member of AMD.[47]  MacDonald's unsworn letter stated that, "[t]he harassing legal requests by your past employer, [Millennium], has been a major distraction to all Members of AMD and several employees."[48]   At his deposition, MacDonald testified that Millennium had made several telephone calls to AMD's

---

[42]  SOF ¶ 110; Ex. 25 to Millennium MSJ: EEOC Charge of Discrimination.

[43]  SOF ¶ 110; Ex. 25 to Millennium MSJ: EEOC Charge of Discrimination.

[44]  SOF ¶ 123.

[45]  SOF ¶ 123.

[46]  SOF ¶ 123.

[47]  SOF ¶ 126.

[48]  Ex. 33 to Millennium MSJ: 4/30/13 Letter AMD to Nelson.

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 9 of 40

attorney, served a subpoena on AMD, and that an AMD representative complained that she was being followed and had someone trying to serve her with papers late at night.[49] MacDonald then testified, "I guess [multiple calls to AMD's lawyer is] not harassing."  He also testified that AMD's reason for severing its relationship with Aeon was "performance-based" because after the first month or two, Nelson's "performance began to suffer,"[50] but that AMD would consider reestablishing the relationship with Aeon after the conclusion of this litigation.[51]

## VI.  Present Litigation involving Millennium.

In April 2011, Ameritox, Ltd., a business competitor of Millennium, filed actions against Millennium in district courts in the Middle District of Florida and Southern District of California, alleging false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a) *et seq.*, unfair trade practices, and unfair competition under state and common law.[52]

In May 2012, Ameritox started paying Nelson's legal fees.[53]  On June 18, 2012, Nelson filed the Complaint commencing this action.[54]  The Complaint initially asserted twenty counts against Millennium, Jason Bristol, and Does 1-10.[55]  On October 2, 2013,

---

[49]  Ex. 34 to Millennium MSJ: 5/22/13 MacDonald Dep. at 120:19-121:1.

[50]  Ex. 34 to Millennium MSJ: 5/22/13 MacDonald Dep. at 153:10-18.

[51]  Ex. Y to Nelson Opp'n: 5/22/13 MacDonald Dep. at 128:18-129:22.

[52]  *See Ameritox, Ltd. v. Millennium Laboratories, Inc.*, 8:11-cv-00775-SCB-TPM (M.D. Fla., filed April 8, 2011) and 8:12-cv-00219-SCB-MPA (M.D. Fla., filed April 22, 2012).

[53]  *See* Docket 149 at 6 (5/22/13 Transcript of Discovery Conference).

[54]  Docket 1 (Compl.).

[55]  Docket 1 (Compl.).

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 10 of 40

the parties stipulated to dismissal of the Complaint against Bristol, as well as to the dismissal of twelve counts in the Complaint against Millennium.[56]   Pursuant to the stipulation, the Court dismissed with prejudice Counts 1 through 8 (concerning age discrimination, sex discrimination, and sexual harassment), 14 (libel), 16 (intentional infliction of emotional distress), 19 (false imprisonment), and 20 (fraud).[57]

Eight claims remain:

(1)   Retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000-3 *et seq.* (Count 9);

(2)   Retaliation under the Arizona Civil Rights Act, A.R.S. § 41-1464(A) (Count 10);

(3)   Retaliation under the Arizona Employment Protection Act, A.R.S. § 23-1501(3)(c) (Count 11);

(4)   Retaliation under the False Claims Act ("FCA"), 31 U.S.C. § 3730(h) (Count 12);

(5)   Slander (Count 13);

(6)   False light invasion of privacy (Count 15);

(7)   Breach of contract (Count 17); and

(8)   Interference with economic advantage (Count 18).

Nelson seeks reinstatement, back pay, additional compensatory damages, punitive damages, and attorneys' fees.

---

[56]  Docket 234 (Stipulation for Order Dismissing Plaintiff's Complaint Against Defendant Bristol with Prejudice); Docket 235 (Stipulation for Order Dismissing with Prejudice Counts 1 through 8, 14, 16, 19 and 20 of Plaintiff's Complaint Against Millennium).

[57]  Docket 236 (Order Dismissing Plaintiff's Complaint Against Defendant Bristol with Prejudice); Docket 237 (Order Granting Stipulated Dismissal with Prejudice of Counts 1 through 8, 14, 16, 19 and 20 of Plaintiff's Complaint Against Defendant Millennium).

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 11 of 40

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a).

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The burden of showing the absence of a genuine dispute of material fact initially lies with the moving party.[58]  If the moving party meets this burden, the non-moving party must present specific evidence demonstrating the existence of a genuine issue of fact.[59]  The non-moving party may not rely on mere allegations or denials.[60]  It must demonstrate that enough evidence supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth.[61]

When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party and draw "all justifiable inferences" in the non-moving party's favor.[62]  To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[63]

---

[58] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

[59] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Oracle Corp.*, 627 F.3d at 387.

[60] *Id.* at 248-49.

[61] *Id.* (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

[62] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

[63] *Id.* at 248.

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 12 of 40

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[64]  If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[65]

## DISCUSSION

**I.    The Court will grant summary judgment to Millennium on Nelson's claims of retaliation under Title VII of the Civil Rights Act and retaliation under the Arizona Civil Rights Act (Counts 9 and 10).**

Count 9 of the Complaint asserts that Millennium violated Title VII, 42 U.S.C. §§ 2000e-3, *et seq.* and committed "federal retaliation."[66]  Count 10 of the Complaint asserts that Millennium violated the Arizona Civil Rights Act ("ACRA"), § 41-1464(A) and committed retaliation in violation of state law.[67]

Title VII and ACRA make it unlawful for an employer to discrimination on the basis of race, color, religion, sex, or national origin.  To establish a *prima facie* case of retaliation under either Title VII or A.R.S. § 41-1464(A), a plaintiff must demonstrate: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected conduct and the adverse employment action.[68]  The protected activity must be activity protected under Title VII.[69]   "Because

---

[64]  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

[65]  *Anderson*, 477 U.S. at 249-50 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *Cities Serv.*, 391 U.S. at 290).

[66]  Docket 6 at 23-24 ¶¶ 167-175 (Compl.).

[67]  Docket 6 at 25 ¶¶ 176-79 (Compl.).

[68]  *McGinest v. GTE Servs. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004); *Najar v. State*, 198 Ariz. 345, 347, 9 P.3d 1084, 1086 (Ariz. App. 2000) (Like under Title VII, under ACRA § 41-1464(A), "it is unlawful for an employer to discriminate against an employee because he or she has opposed an unlawful employment practice.").  In *Najar*, the plaintiff employee filed sexual

2:12-cv-01301-SLG*, Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 13 of 40

Arizona case law on th[e § 41-1464(A)] cause of action is scarce, for guidance [the Arizona courts] look to the federal courts' interpretations of Title VII retaliation claims."[70]

Count 9 of Nelson's Complaint alleges that her filing of an EEOC charge in January 2011 was protected activity.  She alleges that "after terminating [Nelson] on December 9, 2011, both before and after Plaintiff made her initial charge of discrimination to the EEOC under Title VII, Defendant made false and misleading statements to Millennium employees and third-party recruiters," including that Nelson was terminated due to poor performance, did personal errands during work hours, and "was a vexatious litigant seeking to harm" Millennium.[71]  Nelson asserts these actions constitute retaliation in violation of Title VII.  Her Complaint alleges these same post-termination actions violated ACRA, § 41-1464(A).[72]

In opposing summary judgment, Nelson now asserts that Count 9 of the Complaint alleges "both pre and post termination retaliation."[73]  This assertion is without merit, as this Count of the Complaint only addresses actions taken "after terminating" Nelson.  And in any event, Nelson cannot plausibly allege that she was terminated in

harassment claims under Title VII and ACRA, alleging that her employer retaliated against her by denying her a promotion because she had filed an internal sexual harassment complaint. The trial court found that the plaintiff had failed to demonstrate that there was retaliatory motivation behind the decision not to promote, and the Arizona Court of Appeals affirmed.

[69] *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988) (complaining about conduct that could not reasonably be discrimination under Title VII does not constitute protected activity).

[70] *Najar*, 198 Ariz. at 347, 9 P.3d at 1086 (citing *Ariz. Civil Rights Div. v. Olson*, 132 Ariz. 20, 643 P.2d 723 (Ariz. App. 1982)).

[71] Docket 6 at 23-24 ¶¶ 170-172 (Compl.).

[72] *See* Docket 6 at 25 ¶¶ 176-179 (Compl.).

[73] Docket 244 at 38 (Opp'n.).

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 14 of 40

retaliation for filing the EEOC charge because she did not file the charge until several weeks after her termination.[74]

With respect to the post-termination Title VII retaliation claim pled in Nelson's Complaint, Millennium asserts that Nelson has presented "no evidence of any statements Millennium made to any prospective employer" nor could Nelson "point to any adverse employment action to support her retaliation claims."[75]  While the filing of an EEOC charge is protected activity under Title VII, there has been no showing that Nelson suffered any of the adverse employment actions that she has alleged—"inability to secure substitute employment, inferior employment opportunities and even the inability to interview for new third party employment"[76]—due to any conduct by Millennium because of Nelson's EEOC charge.[77]  In short, Nelson has failed to present any evidence that Millennium took materially adverse employment action against her

---

[74]  Nelson now alleges that her phone calls of December 6 or 7 to Moberg about Bristol constituted "protected activity" under Title VII and ACRA.  Docket 244 at 39 (Opp'n).  This assertion is likewise without merit, even if the Complaint is read to extend to pre-termination conduct.  Viewing these facts in the light most favorable to Nelson, complaining to a supervisor about alleged illegal kickback activity is not protected activity under Title VII or the ACRA, for these laws protect against discrimination or retaliation on account of gender, race, age, and national origin.  *Learned*, 860 F.2d 928 at 932.  They are not fraud-whistleblower protection statutes.

[75]  Docket 242 at 17 (Mot.).

[76]  Docket 6 at 24 ¶ 172 (Compl.).

[77]  *See* SOF ¶¶ 121-122.  At deposition, Nelson testified that she was unaware whether Millennium ever communicated with or provided information about her to any of her prospective employers.  *See id.*  In her PCSOF, Nelson disputes Millennium's assertion that "Nelson did not know if Millennium ever communicated with any of her prospective employers" or if prospective employers received information about her.  *See* SOF ¶¶ 121-122.  But in response, Nelson provides only the testimony of MacDonald, which does not contradict Millennium SOF ¶¶ 121-22.  *See Univ. of Texas. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2534 (2013) ("a plaintiff making a retaliation claim under § 2003-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer").

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 15 of 40

due to her filing of the EEOC charge.[78]   And because Arizona courts look to Title VII retaliation claims in determining an ACRA retaliation claim, Nelson's ACRA claim fails for the same reasons.[79]

Thus, the Court will grant Millennium's motion for summary judgment on Counts 9 and 10.

## II.   The Court will grant summary judgment to Millennium on Nelson's claim of retaliation under the Arizona Employment Protection Act (Count 11).

Count 11 of the Complaint asserts that Millennium violated the Arizona Employment Protection Act ("AEPA"), A.R.S. § 23-1501(3)(c)(ii).[80]   A.R.S. § 23-1501(3)(c)(ii) provides:

> An employee has a claim against an employer for termination of employment . . . if . . .
>
> (c) The employer has terminated the employment relationship of an employee in retaliation for . . .
>
> (ii) The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state . . . .[81]

---

[78]  In Section 4 Slander, *infra*, the Court discusses the evidence that Millennium employees may have made comments about Nelson working for a competitor or stealing business.  Even if evidence of these statements is presented at trial, Nelson has presented no evidence that these statements made by employees to employees caused an adverse employment action.

[79]  *Najar*, 198 Ariz. at 347, 9 P.3d at 1086.

[80]  Docket 6 at 25-27 ¶¶ 180-97 (Compl.).

[81]  A.R.S. § 23-1501(3)(c)(ii).

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 16 of 40

Under the plain terms of A.R.S. § 23-1501(3)(c)(ii), a plaintiff has a claim for unlawful retaliation only if the plaintiff had a reasonable belief that the employer was violating the Arizona Constitution or Arizona state law.[82]

Count 11 alleges that, during her employment, Nelson believed that Millennium's practice of providing free POCT cups violated Arizona law.[83]   But Bristol and Lopez were in El Paso, Texas when Bristol allegedly told Lopez to give away the POCT cups. Nelson provides no evidence that she had any reasonable belief that Arizona law was being violated when she reported the December 6 interaction between Bristol and Lopez to Moberg.   Moreover, at deposition, Nelson testified that she believed that Millennium was violating only a federal anti-kickback law:

> Q. What was illegal about what Jason [Bristol] was telling Gilbert [Lopez] to do [on December 6]?
>
> A.  To give free cups to prospective customers. You cannot give any free cups.
>
> Q.  What law did that violate?
>
> A.  An anti-kickback law.
>
> Q.  Anything else?
>
> A.  No.[84]

Counsel asked again, "what was the law that you thought was being broken in [the December 6] discussion?" and Nelson responded "[t]he federal anti-kickback law."[85]

---

[82]  *Id.*; *see also Galati v. Am. W. Airlines, Inc.*, 205 Ariz. 290, 293, 69 P.3d 1011, 1014 (Ariz. App. 2003) (holding that A.R.S. § 23-1501(3)(c)(ii) does not cover federal regulations).

[83]  *See* Docket 6 at 11, 25-26 ¶¶ 73, 181-85 (Compl.) (citing A.R.S. § 13-3713(A); § 36-472(A)).

[84]  Ex. 1 to Millennium MSJ: 5/21/13 Nelson Dep. at 188:9-16.

[85]  Ex. 1 to Millennium MSJ: 5/21/13 Nelson Dep. at 202:16-203:5.

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 17 of 40

Nelson's opposition does not directly address Millennium's motion for summary judgment on this claim.  At oral argument, Nelson's counsel acknowledged that he could not direct the Court to an Arizona statute that Nelson believed was being violated at the time of her report to Moberg, and argued that a plaintiff need not know what statute is being violated when she reports improper conduct in order claim whistleblower protection.[86]   But even if a plaintiff need not know the specific state statute being violated—something the Court need not decide here—there is nevertheless no evidence that Nelson believed she was reporting a violation of any Arizona law when she spoke to Moberg about Bristol's statement in Texas.  Nelson testified that she believed she was reporting a violation of a federal anti-kickback statute, but even if Nelson were referring to a state rather than federal law, the conduct she complained of occurred in El Paso, Texas.  In short, there is no evidence that Nelson believed that she was reporting a violation of Arizona law.  Accordingly, the Court will grant Millennium's motion for summary judgment on Count 11.

### III.   The Court will grant summary judgment to Millennium on Nelson's claim of retaliation under the False Claims Act (Count 12).

Count 12 of the Complaint asserts that Millennium violated the False Claims Act by providing kickbacks to physicians, including free POCT cups and gift cards, that "Millennium routinely submitted or caused to be submitted false claims to Medicare, Medicaid and other federal health care programs in violation of 31 U.S.C. § 3729," that

---

[86]  Docket 258 at 42-43 (Transcript).

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 18 of 40

Nelson complained about these practices, and that Nelson was terminated in retaliation for her efforts to stop these violations.[87]

The FCA was enacted during the Civil War to combat "widespread fraud by government contractors who were submitting inflated invoices and shipping faulty goods to the government."[88]  A "violation of a law or regulation standing alone is not proof of a false claim" actionable under the FCA.[89]   Rather, "[i]t is the false *certification* of compliance [with government requirements] which creates liability [under the FCA] when certification is a prerequisite to obtaining a government benefit."[90]   Liability attaches "not to underlying fraudulent activity, but to the 'claim for payment.'"[91]   To constitute an FCA offense, there must be a "knowing presentation of a claim that is either fraudulent or simply false."[92]

Section 3730(h), the retaliation provision of the FCA, "protect[s] 'whistleblowers,' those who come forward with evidence their employer is defrauding the government, from retaliation by their employer."[93]   It provides, in relevant part:

---

[87]  Docket 6 at 27-28 ¶¶ 198-204 (Compl.).

[88]  *Hopper v. Anton*, 91 F.3d 1261, 1265-66 (9th Cir. 1996) (citing *U.S. v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995)).

[89]  *Id.* at 1270.

[90]  *Id.* at 1266 (citing *U.S. ex rel. Fallon v. Accudyne Corp.*, 880 F.Supp. 636, 638 (W.D. Wis. 1995)) (emphasis in original); *see also Cafasso, U.S. ex rel. v. Gen. Dymanics C4 Sys. Inc.*, 637 F.3d 1047, 1056 (9th Cir. 2011) ("[T]o commit conduct actionable under the FCA, one must, in some way, falsely assert entitlement to obtain or retain government money or property.").

[91]  *Hopper*, 91 F.3d at 1266 (citation omitted).

[92]  *Id.* at 1269 (citing *U.S. ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991)); *see also Cafasso*, 637 F.3d at 1060.

[93]  *Hopper*, 91 F.3d at 1269 (citation omitted).

2:12-cv-01301-SLG*, Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 19 of 40

> Any employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.[94]

To prevail on an FCA whistleblower-retaliation claim, a plaintiff must demonstrate: (1) the employee was engaging in conduct protected under the FCA; (2) the employer knew that the employee was engaging in such conduct; and (3) the employer discriminated against the employee because of her protected conduct.[95]

As to the first requirement—that the employee was engaging in protected activity—"Section 3730(h) only protects employees who have acted 'in furtherance of an action' under the FCA.  Specific awareness of the FCA is not required.  However, the plaintiff must be investigating matters which are calculated, or reasonably could lead, to a viable FCA action."[96]

The Ninth Circuit's decision in *U.S. ex rel. Hopper v. Anton* is instructive. Hopper, a special education teacher, brought an FCA retaliation claim against the school district.  Hopper asserted that the school district had failed to comply with federal law, specifically, the Individuals with Disabilities Education Act ("IDEA").  After Hopper had repeatedly complained about the issue, her employment was terminated.  She alleged that the termination was in retaliation for her reporting the alleged violations.  At

---

[94]  31 U.S.C. § 3730(h)(1).

[95]  *Hopper*, 91 F.3d at 1269.

[96]  *Id.* (citing cases).  The Ninth Circuit has held that "an employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government."  *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002).

2:12-cv-01301-SLG*, Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 20 of 40

trial, a jury found that the school district had retaliated against Hopper for reporting the violations, and the trial court entered judgment on this claim for Hopper.  On appeal, the Ninth Circuit reversed, holding that Hopper was not engaged in protected activity under the FCA.[97]  The Ninth Circuit explained:

> The entire record fails to demonstrate Hopper was engaged in "furtherance of an action" under the FCA.  Rather, the record quite clearly shows Hopper was merely attempting to get the School District to comply with Federal and State regulations.  Her numerous written complaints, seventy letters and over fifty telephone calls were all directed toward this end.  She was not trying to recover money for the government; she was attempting to get classroom teachers into IEP evaluation sessions.  She was not investigating fraud.  She was not whistleblowing as envisioned in the paradigm *qui tam* FCA action. Quite plainly, the thrust of her complaints was that the School District was failing to meet its IDEA obligations to its students.  Correcting regulatory problems may be a laudable goal, but one not actionable under the FCA in the absence of actual fraudulent conduct.[98]

Here, Millennium asserts that Nelson's FCA claim fails because Nelson never complained about fraud against the government.[99]  That is, Nelson cannot demonstrate that she was engaged in protected activity under the FCA.

Nelson reported the December 6 conversation between Bristol and Lopez to Moberg, telling Moberg that Bristol's instruction to Lopez to provide free cups was "a clear violation of the anti-kickback laws" because it would improperly induce health care providers to enter into a business relationship with Millennium.[100]  But at her deposition, Nelson did not indicate that she expressed any concern to Moberg that this practice

---

[97]  *Hopper*, 91 F.3d at 1269.

[98]  *Id.* (citations omitted).

[99]  Docket 242 at 33 (Mot.).

[100]  Ex. B to Nelson Opp'n: 5/21/13 Nelson Dep. at 197:3-22.

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 21 of 40

could possibly result in double billing the federal government.[101]   Rather, at her deposition, Nelson confirmed that she was only concerned with potential violations of the anti-kickback law when she spoke to Moberg.[102]   When questioned by Millennium's counsel, she further testified:

Q.  So what did you think was a violation of the anti-kickback law?

* * *

A.  I was taught that you are not allowed to give anything to a healthcare provider.  And I felt that if a VP of Sales, a VP of Region was asking a rep to do that action, that that is a violation, because he should not be asking a subordinate who is fearful for his job about doing something illegal.

* * *

Q.  Did you think that what Jason Bristol and Gilbert Lopez were talking about was a violation of Stark?

* * *

A.  No. I believe it was a violation of the anti-kickback law of giving somebody to induce them to do business with you.

Q.  The federal anti-kickback law is what you had in mind; right?

A.  Correct.

And that was the only statute that you had in mind when you were referencing some illegality during your conversation with Nicole Moberg on December 6, 2011; correct?

* * *

A.  Correct.[103]

---

[101]  Rather, a "kickback" is "[a] return of a portion of a monetary sum received, esp. as a result of coercion or a secret agreement."  *Black's Law Dictionary* 886 (8th ed. 2004).

[102]  *See* Ex. 1 to Millennium MSJ: 5/21/13 Nelson Dep. at 188:9-16, 202:16-203:5 (quoted at p. 17).

[103]  Ex. 1 to Millennium MSJ: 5/21/13 Nelson Dep. at 204:2-12, 207:3-18.

2:12-cv-01301-SLG*, Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 22 of 40

Nelson's report to Moberg demonstrates only that Nelson wanted Millennium to comply with the federal anti-kickback law.  Thus, like the teacher in *Hopper*, Nelson was not trying to recover money for the government, which is the *sine qua non* of an FCA action.

Moreover, to state an FCA retaliation claim, the plaintiff must be *investigating* possible fraud on the government.  To investigate means "[t]o inquire into (a matter) systematically."[104]  In this regard, Nelson's conduct is distinguishable from the *Hopper* plaintiff's conduct because Hopper conducted substantial investigation, e.g., writing numerous letters and making multiple telephone calls to her employer concerning alleged violations.  In contrast, Nelson made a few telephone calls to her direct supervisor on December 6th or 7th.  A jury could not reasonably find that Nelson was investigating possible fraud on the government when she reported Bristol's December 6 comments to Moberg.[105]

Nelson's December 16, 2013 affidavit filed with her opposition now asserts that she also told Moberg in December 2011 that Bristol's "commands, *if obeyed*, would represent a fraud on the U.S. government."[106]  This recent affidavit does not directly

---

[104]  *Black's Law Dictionary* 844 (8th ed. 2004).

[105]  Nelson testified that she told Moberg that she "would have to take further action," Ex. B to Nelson Opp'n: 5/21/13 Nelson Dep. at 197:3-22, but then Nelson decided to wait for her supervisor to act, alleging though that she would have raised the issue again at a company Christmas party.  *See* Docket 246 at 5 ¶¶ 23-27 (Nelson Aff.).  As explained below, the Court will disregard Nelson's affidavit, but even if the Court accepted that Nelson planned to raise the issue at a company Christmas party, there is no evidence that Nelson took any further investigative action after notifying Moberg.  And although Nelson testified that in September 2009, Goldfarb told Nelson about providing free cups, Nelson does not allege that she told Moberg about that conversation or otherwise reported or investigated this information.  *See* n. 33.

[106]  *See* Docket 246 at 4-5 ¶ 20 (Nelson Aff.) (emphasis added).  The Complaint also alleged that Millennium submitted "false claims" to federal health care programs, *see* Docket 6 at 27-28 ¶ 199, but Nelson points to no credible evidence in the record to support this.

2:12-cv-01301-SLG*, Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 23 of 40

conflict with Nelson's deposition testimony that no free cups had been provided to any doctors on December 6.[107]   But the recent affidavit does conflict with Nelson's May 2013 deposition testimony, in which counsel specifically asked what law Nelson believed could have been violated when she spoke to Moberg as a result of Bristol's December 6 comments, and Nelson responded only the federal anti-kickback law.[108]

In the Ninth Circuit, "a party cannot create an issue of fact by [submitting] an affidavit contradicting h[er] prior deposition testimony."[109]   In some circumstances, the Court might accept an inconsistent affidavit, for example, "if the affiant was confused at the deposition and the affidavit explains those aspects of the deposition testimony" or the affiant is explaining newly discovered evidence.[110]   But where, as here, an affidavit seeks to "'create' an issue of fact and avoid summary judgment," the Court may disregard it.[111]   The recent affidavit will be disregarded, as it appears to be an effort to rewrite Nelson's testimony to create a material issue of fact on the FCA claim.[112]   The evidence in the record of Nelson's complaints to Moberg, without the additions of her self-serving affidavit, clearly did not constitute protected activity under the FCA.   And

---

[107]   SOF ¶¶ 65-66; Ex. B to Nelson Opp'n: 5/21/13 Nelson Dep. at 189:5-192:6.

[108]   Ex. 1 to Millennium MSJ: 5/21/13 Nelson Dep. at 188:9-16; 202:16-203:5, 204:2-12, 207:3-18.

[109]   *Town of Colo. City v. United Effort Plan Trust*, 2013 U.S. Dist. LEXIS 65640 (D. Ariz. May 8, 2013) (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d. 262, 266 (9th Cir. 1991)).

[110]   *Kennedy*, 952 F.2d. at 266.  For this reason, the Court has considered Nelson's post-deposition assertion that her phone call was on December 7, not December 6.  *See supra* Factual and Procedural Background, II.  Nelson's Employment with Millennium, at pp. 3-7.

[111]   *Kennedy*, 952 F.2d. at 266.

[112]   *Cf. Hambleton Bros. Lumbar Co. v. Balkin Enters.*, 397 F.3d 1217, 1225 (2005); *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1008 (9th Cir. 1998).

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 24 of 40

even if the recent affidavit is considered, Nelson has not presented evidence that she was investigating an FCA claim in December 2011.   Indeed, as Nelson herself acknowledges, since no free cups were provided, no fraud on the government could possibly have occurred on December 6, 2011.[113]

For similar reasons, Nelson cannot satisfy the second requirement of an FCA retaliation claim—employer knowledge of the protected activity.[114]  An employer cannot retaliate against an employee for protected activity unless the employer knows about the protected activity.  Nelson's complaints to Moberg, with or without the additions of Nelson's self-serving affidavit, were insufficient to apprise Millennium that Nelson was investigating a possible fraud on the government.  As such, Millennium lacked the requisite knowledge to support a retaliation claim under the FCA.

For the foregoing reasons, the Court concludes that no reasonable jury could find for Nelson on her FCA claim, and will grant Millennium's motion for summary judgment on Count 12.

### IV.   The Court will grant in part and will deny in part Millennium's motion for summary judgment on Nelson's claim of slander (Count 13).

Count 13 of the Complaint asserts that after Nelson was terminated, Millennium slandered her by "verbally publish[ing] false factual statements of and concerning [Nelson] to Millennium staff, agents and associates" as follows: "1) [Nelson] performed her Millennium job duties poorly, 2) [Nelson] instituted administrative and legal action against Millennium, 3) [Nelson] had a personal vendetta against the company, 4)

---

[113]  Ex. 1 to Millennium MSJ: Nelson Dep. at 183:8-17, 185:3-7, 189:5-191:19.

[114]  *Hopper*, 91 F.3d at 1269-70; *Moore*, 275 F.3d at 838.

2:12-cv-01301-SLG*, Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 25 of 40

[Nelson] had already taken another job at a competing lab company, and 5) [Nelson] was engaging in unfair competition by stealing sales from her former Millennium Southwest Regional accounts."[115]

## A. The Arizona legal standard for slander.

Slander is the oral form of defamation.  A defamatory statement is a publication that is "false and . . . bring[s] the defamed person into disrepute, contempt, or ridicule, or . . . impeach[es the defamed person's] honesty, integrity, virtue, or reputation."[116]  "A defamation action compensates *damage to reputation* or good name caused by the publication of false information."[117]  Under Arizona law, a private person states a cause of action for slander by demonstrating that the defendant made a defamatory statement about the plaintiff, published it to a third person, that the defendant was negligent in failing to determine the truth of the statement, and that the statement caused damage to the plaintiff.[118]

Where a defendant utters slander *per se*, the plaintiff need not plead or prove special damages.  In *Modla v. Parker*, the Arizona Court of Appeals explained:

> [S]lander [p]er se is actionable without a need to plead or prove special damages if the utterance falls within one or more specified categories, damages in such case being assumed.  An oral defamation which concerns one in his profession, trade or business [is a category of slander per se]. . . . [T]o fit within the business category, the slanderous utterance

---

[115]  Docket 6 at 12-13, 28-29 ¶¶ 80-82, 205-213 (Compl.).

[116]  *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341, 783 P.2d 781, 787 (1989) (citing *Phoenix Newspapers, Inc. v. Choisser*, 82 Ariz. 271, 312 P.2d 150 (1957)).

[117]  *Id.* at 341, 783 P.2d at 787 (citing *Time, Inc. v. Hill*, 385 U.S. 374, 384, (1967)) (emphasis in original); *see also Turner v. Devlin*, 174 Ariz. 201, 203-04, 848 P.2d 286, 288-89 (1993).

[118]  Rev. Az. Jury Inst. ("RAJI") (Civil) 4th Defamation 1B (Elements Where Negligence is Standard).

2:12-cv-01301-SLG*, Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 26 of 40

must prejudice the person in the profession, trade or business in which he is actually engaged. This means that the statement must be of or concerning one in his business capacity.[119]

There are various defenses to a claim of slander or defamation.  For instance, "substantial truth is sufficient to defeat an action for defamation."[120]  "Slight inaccuracies will not prevent a statement from being true in substance, as long as the 'gist' or 'sting' of the publication is justified."[121]  Statements of opinion that do not "reasonably appear to state or imply assertions of objective fact" are not slanderous or defamatory.[122]  And "[s]tatements of rhetorical hyperbole are not actionable and '[t]he law provides no redress for harsh name-calling.'"[123]  Some statements are entitled to a conditional or qualified privilege.[124]  The qualified or conditional privilege acknowledges that a defendant might be entitled to make "publication in a reasonable manner and for a proper purpose."[125]  "To establish that a privileged occasion arose, a defamation

---

[119]  *Modla v. Parker*, 17 Ariz. App. 54, 56, 495 P.2d 494, 496 (Ariz. App. 1972).

[120]  *Wietcha v. Ameritas Life Ins. Corp.*, No. 05-cv-0324-PHX-SMM, 2006 WL 2772838, at *7 (D. Ariz. Sept. 27, 2006).

[121]  *Read v. Phoenix Newspapers, Inc.*, 169 Ariz. 353, 335, 819 P.2d 939, 941 (Ariz. 1991) (discussing defense of "substantial truth").

[122]  *Yetman v. English*, 168 Ariz. 71, 76, 811 P.2d 323, 328 (Ariz. 1991) ("key inquiry is whether the challenged expression . . . would reasonably appear to state or imply assertions of objective fact," taking into account "the impression created by the words used as well as the general tenor of the expression, from the point of view of the reasonable person"); *see also Hunley v. Orbital Sciences Corp.,* No. 05-cv-1879-PHX-DGC, 2006 WL 2460631 (D. Ariz. Aug. 22, 2006) (granting motion to dismiss, finding that statements in plaintiff's performance review concerning his "interpersonal skills" and "business etiquette" were mere opinion).

[123]  *Ultimate Creations, Inc. v. McMahon*, 515 F.Supp.2d 1060, 1065 (D. Ariz. 2007) (quoting *Flowers v. Carville*, 310 F.3d 1118, 1127 (9th Cir.2002)).

[124]  *Wietcha*, 2006 WL 2772838, at *11.

[125]  *Green Acres Trust v. London*, 141 Ariz. 609, 616, 688 P.2d 617, 624 (Ariz. 1984).

2:12-cv-01301-SLG*, Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 27 of 40

defendant must establish that the circumstances in which the communication was made created an obligation to speak."[126]   Where the defendant demonstrates a qualified or conditional privilege, the plaintiff may still recover for slander or defamation, but only by proving "publication with 'actual malice' or . . . excessive publication."[127]

### B. The Court will deny summary judgment on statements that Nelson went to work for a competitor and was stealing business.

Nelson asserts that Millennium employees stated that Nelson took a new job with a competitor and was stealing sales from Millennium.  At her deposition, Sara Roodbari, a Millennium sales representative, testified that Moberg told Roodbari and several other sales representatives that "Nelson had gone to work for a competitor . . . and that she was stealing or trying to take [Millennium's] business, something to that effect."[128]   And Denise Amen, another sales representative, testified that in February 2012, Moberg told Amen that Nelson was working for another urine drug testing company, but Amen did not believe that because she believed that Nelson had a non-compete agreement with Millennium.[129]

Millennium asserts that these statements are not actionable slander because they "were made to other Millennium employees" and "relate directly to Millennium's

---

[126]   *Id.* at 616, 688 P.2d at 624.

[127]   *Id.*; *see also* RAJI (Civil) 4th Defamation 1A (Elements Where Actual Malice is Required).

[128]   Ex. H to Nelson Opp'n: Roodbari Dep. at 36:15-41:18.  These comments were apparently made during a conference in Palm Springs in spring 2012.  *See id.* at 41:2-18; Ex. 1 to Millennium MSJ: Nelson Dep. at 314:1-316:12.

[129]   Ex. 27 to Millennium MSJ: Amen Dep. at 173:21-175:19.

2:12-cv-01301-SLG*, Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 28 of 40

relationships with its customers and competitors."[130]   Millennium further asserts that these statements are not slander per se.[131]

For purposes of summary judgment, the Court disagrees.  These statements, if made, appear to speak directly to Nelson's professional reputation in the medical sales business.  These alleged statements would concern Nelson in her business capacity, making them slander per se.[132]  Employers may have a conditional privilege in speaking with current employees concerning their business and potential competition, including competition by an ex-employee.  However, Millennium has not demonstrated that there are no disputed factual issues on whether publication was made, and whether it was done in a reasonable manner or for a proper purpose.  For instance, Millennium has not demonstrated that, in these circumstances, Moberg had an "obligation to speak" concerning Nelson's employment with a competitor company in early February 2012, when Nelson did not resume working until August.[133]  Millennium's motion for summary judgment on these statements is denied.

---

[130]  Docket 242 at 40 (Mot.).

[131]  Docket 242 at 41 (Mot.).  Millennium also asserts that saying a former employee is "engaging in competition in the same industry . . .  is the sincerest form of flattery."  Docket 242 at 41 (Mot.).  The Court finds unpersuasive the argument that a statement that a former employee is now a competitor who is stealing clients is, as a matter of law, not slanderous.

[132]  *Modla*, 17 Ariz. App. at 56, 495 P.2d at 496.  *Compare Breeser v. Menta Grp., Inc.*, 934 F.Supp.2d 1150, 1163-64 (D. Ariz. 2013) (holding on summary judgment that statement that plaintiff "quit" was not slander per se).

[133]  *Green Acres*, 141 Ariz. at 616, 688 P.2d at 624.

2:12-cv-01301-SLG*, Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 29 of 40

**C. The Court will grant summary judgment to Millennium on statements that Nelson commenced legal action against Millennium.**

The parties agree that on December 30, 2011, Nelson's attorney sent a letter to Millennium that "threatened to commence legal action against Millennium . . . if Millennium did not agree to pay Nelson's settlement demand."[134]  Nelson presents no evidence of any Millennium employee commenting on potential legal action by Nelson prior to this demand letter.

The basis of Nelson's slander claim appears to arise from a January 3, 2012 email from Millennium's general counsel that was distributed to approximately three dozen Millennium employees, advising them that Nelson had filed a "formal complaint" against Millennium, and instructing employees that "[i]f they speak about any [Millennium] matters [to Nelson], they are in violation of their own employment/confidentiality agreements," but that "[i]f someone has a personal relationship with [Nelson], they can speak to her on those matters only."[135]  Renee Field, a sales representative, testified that the email said she could continue her personal relationship with Nelson.  But Field testified that Moberg told Field "it was best to stop all communication."[136]

Millennium asserts that any statement that Nelson filed a "formal complaint" against Millennium is not slander because it is substantially true.  And as noted above,

---

[134]  SOF ¶ 108.

[135]  Ex. 26 to Millennium MSJ: 1/3/12 /3/12 Email Millennium general counsel to employees and forwarded.  Nelson did not file her EEOC charge until January 24, 2012.

[136]  Ex. P to Nelson Opp'n: Field Dep. at 262:15-22.

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 30 of 40

"substantial truth is sufficient to defeat an action for defamation."[137]   There is no question that Nelson did, in fact, send a demand letter to Millennium prior to circulation of the January 3 email.   Although Nelson had not yet filed her EEOC charge nor the current Complaint, the "'gist' or 'sting'" of a statement that Nelson filed a complaint versus threatened to commence legal action is substantially similar.[138]   And Moberg's alleged advice to Field—that it was best to cease communication with Nelson—appears to be more of a personal interpretation of the general counsel's email, rather than a direction, instruction, or slanderous statement.   Accordingly, these statements cannot support Nelson's claim for slander.

### D. The Court will grant summary judgment to Millennium on statements that Nelson performed her job poorly, went to the spa, and had a personal vendetta against Millennium.

Nelson has not directed the Court to any admissible evidence that Millennium employees stated that Nelson performed her job poorly, went to the spa, or had a personal vendetta against Millennium.[139]

Nelson asserts that Brandon Worley, Regional Vice President, told Joel Bramer, RSM for the Northwest, that Nelson went to the spa 2-3 times per week, and that Moberg told Jesse Seery, a sales representative, that Nelson went to the spa 2-3 times per week and was not doing her job.[140]   But Nelson was not present for these

---

[137]   *Wietcha*, 2006 WL 2772838, at *7.

[138]   *See Read*, 169 Ariz. at 335.

[139]   Nelson specifically concedes that she never heard Bristol say that Nelson was not performing her job.  SOF ¶ 113.  *See Breeser*, 934 F.Supp.2d at 1163-64 (declining to consider statements not supported by the record).

[140]   Ex. 1 to Millennium MSJ: Nelson Dep. at 310:15-313:13.

2:12-cv-01301-SLG*, Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 31 of 40

conversations and presents no admissible evidence that these statements were made. The only evidence of these assertions is Nelson's deposition testimony, which is inadmissible hearsay for these purposes and cannot support Nelson's claim of slander.[141]

Elizabeth Peacock, National Vice President of Sales, testified that she "heard one time" that Nelson coached her SWR representatives "in the form of a spa afternoon, not in front of customers."[142]   And Denise Amen testified that she once heard that Nelson had gone to the spa, though Amen could not remember who she heard the comment from, and Amen thought the comment was ridiculous.[143]  As neither Peacock nor Amen recall who made the statements, they cannot satisfy the requirements of Federal Rule of Evidence 801(d)(2) (statement of a party opponent), nor any other hearsay exception.   The statements are inadmissible for purposes of summary judgment and cannot support Nelson's claim of slander.

And Nelson has provided no evidence whatsoever that a Millennium employee stated that Nelson had a personal vendetta against the company.[144]

For the foregoing reasons, the Court will grant in party and deny in part Millennium's motion for summary judgment on Count 13.

---

[141]   *See Courtney v. Canyon Television & Appliance Rental, Inc.*, 899 F.2d 845, 851 (9th Cir. 1990) (plaintiff's statements that employees made statements about plaintiff did not fall within any exception to hearsay rule, and thus were inadmissible for purposes of summary judgment).

[142]   Ex. J to Nelson Opp'n: Peacock Dep. at 120:21-24.

[143]   Ex. O to Nelson Opp'n: Amen Dep. at 175:20-176:24.

[144]   It appears, however, that Millennium does not oppose a characterization that it believes that Nelson has a personal vendetta against the company.  *See* Docket 242 at 42-43, n. 18 (Mot.) ("[I]t is clear that Nelson does indeed have a "vendetta" against Millennium, as demonstrated by the undisputed facts.").

2:12-cv-01301-SLG*, Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 32 of 40

**V.    The Court will grant summary judgment to Millennium on Nelson's claim of false light invasion of privacy (Count 15).**

Count 15 of the Complaint asserts that Millennium committed the tort of false light invasion of privacy by "publish[ing] false and misleading statements to current and past Millennium employees and other third parties that [Nelson]: "(a) had performed her Millennium job very poorly while with Millennium; (b) had commenced legal action against Millennium when she had not yet done so; (c) had accepted new employment with a competing medical lab when she had not, and continues to not have done so; and (d) was stealing clients from her former Millennium accounts in performing her new job with the competing medical lab company."[145]

"Under Arizona law, the tort of false light occurs when 'the defendant knowingly or recklessly published false information or innuendo about the plaintiff that a reasonable person would find highly offensive."[146]   The publication must involve "a major misrepresentation of [the plaintiff's character, history, activities, or beliefs, not merely minor or unimportant inaccuracies."[147]   In *Hart v. Seven Resorts Inc.*, the Arizona Court of Appeals explains:

> "Publicity" as it is used in this Section, differs from "publication" [for defamation purposes] . . . which includes any communication by the defendant to a third person.  "Publicity" on the other hand, means that the matter is made public, by communicating it to the public at large, or to so

---

[145]  Docket 6 at 31-33 ¶¶ 223-34.

[146]  *Ultimate Creations*, 515 F.Supp.2d 1060 (quoting *Hart v. Seven Resorts Inc.*, 190 Ariz. 272, 280, 947 P.2d 846, 854 (Ariz. App. 1997); *Godbehere*, 162 Ariz. at 340, 783 P.2d at 786.

[147]  *Godbehere*, 162 Ariz. at 341, 783 P.2d at 787.

2:12-cv-01301-SLG*, Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 33 of 40

many persons that the matter must be regarded substantially certain to become one of public knowledge.[148]

Citing various cases, *Hart* explains that communicating a fact to a small group of people would be insufficient to support the claim, but "publication in a newspaper or magazine, even of small circulation" or "an address to a large audience, is sufficient."[149]

Here, there is some evidence that Moberg told several other Millennium employees that Nelson had gone to work for a competitor and was stealing Millennium business.[150]   But these statements to various Millennium employees cannot constitute "publicity" for purposes of a false light privacy action.   No reasonable jury could find that these statements to various employees could be "substantially certain to become [subjects] of public knowledge."[151]

The evidence demonstrates that the Millennium general counsel's email stating that Nelson had filed a "formal complaint" and instructing employees concerning future interactions with Nelson was circulated to a group of over 30 employees.   But this limited distribution is similarly not broad enough to satisfy the "publicity" requirement of a false light invasion of privacy claim.   And Nelson has not demonstrated that the general counsel's email contained false information or innuendo about Nelson that a reasonable person would find highly offensive.   Rather, there is no dispute that, at that

---

[148]  *Hart*, 190 Ariz. at 280, 947 P.2d at 854.

[149]  *Id.*

[150]  Ex. 1 to Millennium MSJ: Nelson Dep. at 311:1-18; 313:7-25; Ex. H to Nelson Opp'n: Roodbari Dep. at 36:15-41:18; Ex. J to Nelson Opp'n: Peacock Dep. at 120:21-24; Ex. O to Nelson Opp'n: Amen Dep. at 175:20-176:24; Ex. 27 to Millennium MSJ: Amen Dep. at 173:21-175:19.

[151]  *Hart*, 190 Ariz. at 280, 947 P.2d 854.

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 34 of 40

point, Nelson had sent to Millennium a demand letter;[152] an employer may reasonably instruct employees in those circumstances.   The remaining statements are not supported by the record.

For the foregoing reasons, the Court will grant Millennium's motion for summary judgment on Count 15.

## VI.   The Court will grant summary judgment to Millennium on Nelson's claim of breach of contract (Count 17).

Count 17 of the Complaint asserts that Millennium breached an employment contract with Nelson by failing to adequately and completely pay her all commissions and bonuses for work performed.[153]  But this issue is not in Nelson's summary judgment briefing at all—the opposition contains no assertion that any money is due from Millennium to Nelson and instead argues that Millennium "breached the implied covenant of good faith and fair dealing when it suddenly terminated the employment relationship in violation of well-established public policy."[154]

The Arizona Employment Protection Act ("AEPA") addresses the severability of an employment relationship in Arizona.[155]   AEPA provides that an "employment relationship is severable at the pleasure of either the employee or employer unless both the employee and employer have signed a written contract to the contrary" for a specific

---

[152]  Ex. 26 to Millennium MSJ: 1/3/12 Email Millennium general counsel to employees and forwarded.

[153]  Docket 6 at 34-35 ¶¶ 239-246 (Compl.).

[154]  Docket 244 at 51 (Opp'n).

[155]  *White v. AKDHC*, 664 F.Supp.2d 1054, 1065 (D. Ariz. 2009).

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 35 of 40

duration of time or otherwise restricts either party's rights to terminate the employment relationship.[156]

Arizona law also provides that "[t]he covenant of good faith and fair dealing is implied in every contract, including at-will employment contracts."[157]  But this covenant only "requires that neither party do anything that will injure the right of the other to receive the benefits of their agreement."[158]  Thus, "it protects an employee only to the extent that the employer denied the terminated employee benefits agreed to in the employment contract."[159]  In an at-will employment agreement, "a termination without cause does not breach the implied covenant of good faith and fair dealing" though "a viable claim for breach of the implied covenant may lie if a plaintiff is alleging that conduct other than the termination itself breached the covenant."[160]

Here, Nelson alleges that Millennium breached the implied covenant of good faith and fair dealing by terminating her employment when Nelson reported her concerns about Bristol to Moberg.[161]  But there is no dispute that Nelson was an employee at-will.[162]  Nelson points to no authority that would support a finding of a breach of the

---

[156] A.R.S. § 23.1501.2.

[157] *White*, 664 F.Supp.2d at 1061 (citing *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 385, 710 P.2d. 1025, 1040 (Ariz. 1985), *superseded in part by* A.R.S. § 23-1501).

[158] *Id.*

[159] *Id.*

[160] *Id.* at 1065.

[161] Docket 244 at 51 (Opp'n).

[162] SOF ¶ 15.

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 36 of 40

implied covenant of good faith and fair dealing in these circumstances.  Accordingly, the Court will grant Millennium's motion for summary judgment on Count 17.

## VII.  The Court will grant summary judgment to Millennium on Nelson's claim of interference with economic advantage (Count 18).

Count 18 of the Complaint asserts that Millennium committed tortious interference with economic advantage by interfering with Nelson's ability to obtain employment after her termination from Millennium.[163]

To state a claim for tortious interference with business expectancy, a plaintiff must demonstrate: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted."[164]  Under Arizona law, the plaintiff must "'identify a specific relationship with which the defendant interfered' . . . the speculative hope of a business expectancy is not enough."[165]  The interference must be "both intentional and improper. . . . [T]here is ordinarily no liability absent a showing that defendant's actions were improper as to motive or means."[166]

---

[163]  Docket 6 at 35-37 ¶¶ 247-258 (Compl.).

[164]  *ThermoLife Intern., LLC v. Gaspari Nutrition, Inc.*, 871 F.Supp.2d 905, 912 (D. Ariz. 2012) (quoting *Wagenseller*, 147 Ariz. at 386, 710 P.2d. at 1041).

[165]  *Id.* (quoting *Dube v. Likins*, 216 Ariz. 406, 414, 167 P.3d 93, 101 (Ariz. App. 2007)).

[166]  *Safeway Ins. Co. v. Guerrero*, 210 Ariz. 5, 17, 106 P.3d 1020, 1026 (Ariz. 2005) (Guerrero did not act inappropriately by threatening civil litigation); Restatement (Second) Torts § 767 (1979), cmt. c ("The use of these weapons of inducement is ordinarily wrongful if the actor has no belief in the merit of the litigation or if, though having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication.").

2:12-cv-01301-SLG*, Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 37 of 40

Nelson asserts that Millennium interfered with her business expectancy by making offending statements about Nelson and circulating those statements within the industry.[167]   Nelson asserts that Millennium knew this would prevent Nelson from acquiring employment in the field.[168]   Nelson also asserts that "[a]s a result of Millennium's conduct, including improper conduct after the initiation of this action, Nelson was removed from her AMD relationship on April 30, 2013."[169]   AMD's termination letter to Aeon states that, "[t]he harassing legal requests by your past employer, [Millennium], has been a major distraction to all Members of AMD and several employees."[170]

Nelson cannot satisfy the requirements to make out a claim of tortious interference with business expectancy.   The only contractual relationship or business expectancy identified by Nelson with which Millennium allegedly interfered is Aeon's relationship with AMD.[171]   Millennium knew of the relationship and sought discovery from AMD related to litigation involving Nelson and Millennium.   But Nelson cannot demonstrate that Millennium "intentional[ly] and improper[ly]" interfered with the relationship.[172]   Nelson does not provide any evidence that Millennium engaged in improper conduct.   Nelson directs the Court to the deposition of AMD manager

---

[167]   Docket 244 at 52 (Opp'n).

[168]   Docket 244 at 52 (Opp'n).

[169]   Docket 244 at 52 (Opp'n).

[170]   Ex. 33 to Millennium MSJ: 4/20/13 Letter AMD to Nelson.

[171]   Nelson does not allege that Millennium in any way affected her obtaining a position with Nova Nordisk or her voluntary resignation from that position.

[172]   *Guerrero*, 210 Ariz. at 17, 106 P.3d at 1026.

2:12-cv-01301-SLG*, Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 38 of 40

MacDonald, who testified that Millennium sent a subpoena to AMD, made several telephone calls to AMD's counsel, and possibly followed an employee for purposes of serving papers.  The record also reflects that AMD severed its relationship with Aeon because of Nelson's performance; that AMD might be willing to reestablish its relationship with Nelson after completion of this litigation; and that MacDonald agreed with Millennium's counsel that Nelson's performance may have been negatively affected by this litigation.[173]  But none of this demonstrates improper conduct by Millennium, given that the parties are engaged in a legal dispute, and Nelson does not question the legitimacy of that legal dispute.  As Millennium's counsel stated at oral argument, "[n]obody likes to be a third party involved in somebody else's litigation,"[174] but even if AMD terminated its relationship with Aeon because of this litigation, this alone could not support Nelson's claim of tortious interference.

Nelson has not demonstrated that there are triable issues of fact on whether Millennium improperly and intentionally interfered with Nelson's relationship with AMD. Therefore, the Court will grant Millennium's motion for summary judgment on Count 18.

---

[173]  *See* Ex. 34 to Millennium MSJ: 5/22/13 MacDonald Dep. at 153:10-18; Ex. Y to Nelson Opp'n: 5/22/13 MacDonald Dep. at 128:18-129:22.

[174]  Docket 258 at 47 (Transcript).

2:12-cv-01301-SLG*, Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 39 of 40

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Millennium's motion for summary judgment at Docket 242 as to Counts 9-12, 15, and 17-18, and **GRANTS in part and DENIES in part** Millennium's motion for summary judgment as to Count 13.

DATED this 5th day of June 2014, at Anchorage, Alaska.

_/s/ Sharon L. Gleason_
United States District Judge

(cc: All Counsel of Record)

2:12-cv-01301-SLG, *Nelson v. Millennium Laboratories, Inc. et al.*
Order on Motion re Summary Judgment
Page 40 of 40